# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

UNPUBLISHED
March 10, 2015

v

JASON ROSELL PECK,

      Defendant-Appellant.

No. 319414
Wayne Circuit Court
LC No. 13-005447-FC

Before: GLEICHER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

A jury convicted defendant of felony murder, MCL 750.316(1)(b), and torture, MCL 750.85, in relation to the stabbing death of Stacy Hightower.[1] Defendant contends that his trial counsel was ineffective for failing to request lesser included offense instructions in connection with the felony-murder charge. Such instructions were not supported by a rational view of the evidence, however. Defendant challenges counsel's lack of trial preparation, a claim not supported by the record. Defendant also raises a meritless claim of prosecutorial misconduct. Absent any discernible error in the trial proceedings, we affirm.

## I. BACKGROUND

On the evening in question, defendant met Hightower at a bar where a party was being thrown. According to Hightower's friends, defendant left the party right after Hightower and followed her out. Defendant's friend, on the other hand, testified that defendant left before Hightower and that Hightower left with another woman and the disc jockey. Witnesses basically agreed on defendant's apparel that night, however. They asserted that defendant was wearing a blue jean jacket and blue denim pants along with white and light blue gym shoes and a pair of dark sunglasses.

---

[1] The prosecutor also charged defendant with first-degree premeditated murder and the jury convicted him of the lesser included offense of second-degree murder. The trial court vacated that conviction at sentencing.

-1-

About an hour later, a mother, SM, and her teenage son, DM, awakened in their second floor apartment to the sound of a man speaking "aggressively" and a woman screaming. They called 911. Despite contacting authorities four times, no one came to the rescue and the fight on the first floor lasted 45 minutes. At one point during the extended ordeal, the witnesses heard the woman beg, "just kill me." They also heard the victim call her assailant "the devil." They recognized the sounds of a person being slammed against a wall and slapped, and someone rummaging loudly through the apartment's kitchen. They also heard someone unsuccessfully trying to open the apartment door, implying that the victim was trying to escape. The mother and son saw the assailant when he left the apartment building. He wore a blue jean "outfit" and brown boots, and drove away in a white construction van with no windows and a ladder or railing on the top.

Investigating officers learned defendant's name from employees at the bar where the party had been thrown. They travelled to defendant's residence and saw a white construction van with a roof ladder rack parked in the driveway. Defendant exited the house while the police awaited a search warrant. Defendant was wearing tan work boots, like those allegedly worn by the assailant. The officers arrested defendant and found a pair of vice grips and bloody socks in his pocket. DNA analysis revealed Hightower's blood on the socks. Defendant's hands smelled like gasoline and bleach. A wet, freshly bleached blue jean outfit was found in defendant's basement. Defendant had a cut on one of his fingers.

Officers found Hightower lying face down on the bedroom floor of her apartment. There was blood throughout the apartment, including bloody fingerprints on the bedroom wall. A piece of a knife blade and handle were found next to Hightower's body. Hightower had been stabbed approximately 60 times all over her body. The fatal cluster of 12 stab wounds was located on the back of Hightower's head and neck. She also had bruising on her right hand and face, and several lacerations inside her mouth. Hightower also bore marks from being punched and kicked. A pair of sunglasses bearing defendant's DNA was found inside the apartment.

The defense theory was that someone other than defendant committed the murder. In support, defense witnesses testified that a white construction van belonging to an unknown third party was parked outside the victim's apartment shortly after the murder. Defendant also explained his cut as a work injury from the day before the incident. In closing argument, counsel focused on the absence of Hightower's blood on the denim outfit and the failure to evaluate the bloody fingerprint evidence on the bedroom wall. Defense counsel suggested that Hightower may have accidentally brought home defendant's sunglasses, explaining their presence in her apartment. Counsel also suggested that the bloody socks found on defendant's person were planted by the police.

## II. JURY INSTRUCTIONS

The prosecution charged defendant with alternate counts of first-degree murder—premeditated and committed during a felony, specifically torture. After instructing the jury on the premeditated murder charge, the court informed the jury that it could convict defendant of the lesser included offense of second-degree murder. In relation to the felony-murder charge, however, the court did not instruct the jury on a lesser included offense. Defendant contends that his trial counsel was ineffective because he failed to request this lesser included offense

instruction and approved the instructions as given. Based on these instructions, the jury acquitted defendant of premeditated murder and convicted him of the lesser included second-degree murder charge, as well as felony murder and torture.

> A party must object or request a given jury instruction to preserve the error for review. Absent an objection or request for an instruction, this Court will grant relief only when necessary to avoid manifest injustice. Where counsel expresses satisfaction with the jury instructions, however, any claim of error is deemed waived, leaving nothing for this Court's review. [*People v Galloway*, 307 Mich App 151, 157; ___ NW2d ___ (2014) (quotation marks and citations omitted.]

Defendant also failed to preserve his challenge to counsel's performance by requesting a new trial or a *Ginther*[2] hearing. Our review is therefore limited to errors apparent on the record. *Id.*

> " '[T]he right to counsel is the right to the effective assistance of counsel.'" *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have differed. *Id.* at 663-664. The defendant also must overcome the strong presumptions that his "counsel's conduct [fell] within the wide range of reasonable professional assistance," and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*Galloway*, 307 Mich App at 157-158.]

Defendant correctly notes that second-degree murder is a necessarily included lesser offense of felony murder. *People v Clark*, 274 Mich App 248, 257; 732 NW2d 605 (2007), quoting *People v Carter*, 395 Mich 434, 437-438; 236 NW2d 500 (1975). This does not mean that defendant was automatically entitled to a second-degree murder instruction. " '[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it.' " *People v Smith*, 478 Mich 64, 69; 731 NW2d 411 (2007) (alteration in original), quoting *People v Cornell*, 466 Mich 335, 357; 711 NW2d 83 (2006). A defendant is entitled to a retrial before a properly instructed jury if "the evidence presented at trial 'clearly' supported the lesser included instruction." *People v Silver*,

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

466 Mich 386, 388; 646 NW2d 150 (2002). "A[n] offense is 'clearly' supported when there is substantial evidence to support the requested lesser instruction." *Id.* at 388 n 2.

A "rational view of the evidence" did not support the reading of a second-degree murder instruction as an alternative lesser offense to felony murder. The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014) (citations and quotation marks omitted). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v Goecke*, 457 Mich 442, 464; 579 NW2d 868 (1998). The malice necessary to establish a second-degree murder charge is substantively identical to that required for a felony-murder conviction. See *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). The only difference between the two offenses in this case would have been that felony murder required a determination that defendant committed torture—the underlying offense.

The existence of substantial evidence of torture rendered a lesser second-degree murder instruction insupportable. The torture charge underlying defendant's felony-murder offense is defined in MCL 750.85 as follows:

> (1) A person who, with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control commits torture and is guilty of a felony punishable by imprisonment for life or any term of years.
>
> (2) As used in this section:
>
> (a) "Cruel" means brutal, inhuman, sadistic, or that which torments.
>
> (b) "Custody or physical control" means the forcible restriction of a person's movements or forcible confinement of the person so as to interfere with that person's liberty, without that person's consent or without lawful authority.
>
> (c) "Great bodily injury" means either of the following:
>
> (*i*) Serious impairment of a body function as that term is defined in . . . MCL 257.58c.
>
> (*ii*) One or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds.
>
> (d) "Severe mental pain or suffering" means a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner caused by or resulting from any of the following:
>
> (*i*) The intentional infliction or threatened infliction of great bodily injury.

\* \* \*

(*iii*) The threat of imminent death.

(*iv*) The threat that another person will imminently be subjected to death, [or] great bodily injury. . . .

(3) Proof that a victim suffered pain is not an element of the crime under this section . . . .

Hightower's attack lasted 45 minutes. During this time, her assailant kicked and slapped her and slammed her against walls. Hightower attempted to escape as evidenced by the presence of blood in multiple rooms of the apartment and the noises heard by the upstairs neighbors. Her attacker would not allow her to escape, however. Hightower was heard screaming in pain and fright, and even begging the perpetrator to take her life rather than continue with his sadistic acts. Ultimately, the killer likely used one of Hightower's own kitchen knives to repeatedly stab her. She bore defensive wounds from trying to stave off the approximately 50 nonfatal knife thrusts. Unfortunately, the killer overcame his victim. Hightower was found face down with a dozen fatal stab wounds to the back of her head and neck.

It is possible from the evidence that the jury could have concluded that defendant did not plan his attack ahead of time, thereby supporting a second-degree murder instruction as an alternate to the premeditated murder count. The same cannot be said with the second count. Substantial evidence of torture placed this offense clearly in the realm of felony murder, negating any right to a lesser offense instruction to this charge. Defense counsel cannot be deemed ineffective for "[f]ailing to advance a meritless argument or a futile objection." *People v Erickson*, 288 Mich App 192, 201; 793 NW2d 120 (2010). And absence of this instruction would not have merited a retrial. Accordingly, we discern no error in counsel's conduct.[3]

## III. INVESTIGATION

In a pro se brief filed pursuant to Admin Order 2004-6 Standard 4, defendant contends that defense counsel was ineffective for failing to "adequately investigate the primary defense theory—that [defendant] was not the perpetrator." In defendant's estimation, trial counsel failed to effectively capitalize on the absence of defendant's DNA on the bloody socks found in his pocket and on the knife found by the victim's body and thereby doomed his chosen defense theory. Defendant further contends that counsel should have selected an altogether different strategy: proving that defendant was not the perpetrator based on the upstairs neighbors' inability to identify him. Defendant also challenges defense counsel's failure to adequately contest the sole black and white photograph of the sunglasses found inside Hightower's apartment and the fact that the evidence technicians did not record the location of the glasses on apartment diagrams.

---

[3] Moreover, requesting a lesser included offense instruction would have been inconsistent with defense counsel's trial strategy to create a reasonable doubt that defendant was the murderer.

The specter of trial strategy cannot insulate all decisions made by trial counsel.

> [A] court must determine whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. [*People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citations omitted).]

There is no record indication that defense counsel's investigation was less than adequate. Counsel supported his theory that defendant was not the perpetrator. For example, defense counsel called defendant's sister as a trial witness. She testified that she took a photograph a few days after defendant's preliminary examination depicting a white truck with a yellow ladder that was parked within 50 feet of Hightower's apartment building. Defense counsel also called Michael Russell as a witness, who testified that defendant received a cut on his hand from cutting down trees the day before the incident, not from any attack on the victim.

Counsel highlighted what he perceived as a lack of damning DNA evidence. Counsel cross-examined a prosecution witness regarding the absence of defendant's DNA on a piece of metal taken from the scene and in the scrapings from underneath Hightower's fingernails. Defense counsel also questioned the witness regarding the lack of Hightower's blood on the clothing defendant had worn the night before. In relation to the sunglasses, counsel interrogated another witness about the photograph and the failure to accurately diagram their location. In any event, the record reveals that the sunglasses were listed in the evidence technician's initial report, undermining defendant's suggestion that the police manufactured this evidence. He further elicited testimony from the witness regarding the improper handling of the bloody socks. Defense counsel, therefore, attempted to undermine the prosecution's argument that defendant was the perpetrator of the crime by questioning the prosecution's witnesses and calling witnesses who offered alternative explanations for the prosecutor's evidence. Counsel then tied the theory together during closing argument. That counsel's chosen strategy was unsuccessful does not render his performance constitutionally defective. *Kimmelman v Morrison*, 477 US 365, 386; 106 S Ct 2574; 91 L Ed 2d 305 (1986).[4]

## IV. PROSECUTORIAL MISCONDUCT

In his pro se brief, defendant also challenges several comments made by the prosecutor in closing argument. Defendant failed to preserve any of these challenges by raising a contemporaneous objection in the trial court. See *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Our review is therefore limited to plain error affecting defendant's substantial rights. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). A

---

[4] We acknowledge that defense counsel did not emphasize in closing argument that the upstairs neighbors only saw the perpetrator from the waist down and therefore could not identify defendant. The evidence was before the jury, and the failure to revisit it in closing was not fatal.

prosecutor engages in misconduct if he or she denies the defendant a fair and impartial trial. *Id.* "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id*. (quotation marks and citation omitted).

Defendant first contends that the prosecutor shifted the burden of proof. In relation to this argument, defendant includes a block quote (with quotation marks on either end) with several transcript page citations. This language is not actually a quotation, however. Rather, it is defendant's summary or paraphrase of several lines in the prosecutor's closing argument which he is challenging. A prosecutor may not make a statement that shifts the burden of proof onto the defendant. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010).

During his closing argument, the prosecutor stated:

> [DM] said, I saw a male leaving. He had on bluejeans. He had on a bluejean jacket and he had a white shirt that hung down longer than the jacket and he says -- there's some discrepancy about the shoes. He says he didn't really see his shoes, but then he says -- [defendant's attorney] pointed out that he previously testified that he saw dark boots and he sees this man leave and he goes down to the end of his hall and he sees the white van leaving the apartment area.

The prosecutor added, "[DM] did say dark boots cause [defendant's attorney] pointed out, you said dark boots, and he said, if I said it, I said it." The prosecutor then noted that when defendant was taken into custody, he was wearing brown boots. He contended that the boots were "just like [DM] said he saw him leaving her house in, brown boots." The prosecutor cited evidence that defendant had several pairs of brown boots in his closet, making it more probable that he had a pair of brown boots in his van on the night of the incident.

These comments did not shift the burden of proof. Rather, they represent reasonable inferences stemming from the evidence presented at trial. See *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). DM testified during cross-examination that he could not then recall whether the man who exited the apartment was wearing brown boots, but avowed that if he had previously made that statement to the police, it was likely true. After further questioning by defense counsel, DM stated, "Man, the dude, man, he had boots on, all right." Evidence established that defendant was wearing tan work boots when he was arrested and that at least three other pairs were found in his closet.

Defendant challenges the prosecutor's commentary regarding the cut on his finger. The prosecutor asserted, "I submit to you that those cuts on [defendant's] hands are not from a rope. They are not from a rope and they are not to the palms. They're just nicks on his fingers." The prosecutor later reiterated that the rope that defendant used to bring down a tree while at work the day before the incident did not cause the cuts on defendant's hands. According to witnesses, defendant did not bear any injuries at the party. Thus, these statements were also reasonable inferences stemming from the witness testimony.

The prosecutor averred that the investigating officers had collected a "laundry list" of evidence, but noted that he would only discuss a few items during closing argument. This

statement did not improperly shift the burden of proof. The prosecutor reiterated that the jury had heard the evidence in this case, but he limited his discussion to the evidence he deemed most relevant.

Finally, the prosecutor's statement that "Miss Hightower faced -- what she told you that night, she faced the devil and the evidence shows that the devil -- that devil sits right here and it's Jason Peck" also constituted a reasonable inference from the facts presented at trial. SM testified that she heard Hightower call the man in the apartment the devil. The prosecutor's statement reiterated his position that defendant was the man that attacked Hightower in her apartment. The prosecutor was not required to argue his position in the blandest possible terms. See *Dobek*, 274 Mich App at 66. Therefore, the statement constituted a reasonable inference from the testimony presented at trial.

Defendant also challenges defense counsel's failure to object to the subject comments. As the prosecutor did not cross the line into impropriety, any objection would have been futile. Therefore, counsel cannot be deemed ineffective in this regard. See *Ericksen*, 288 Mich App at 201

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood