# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN ANTHONY GALLOWAY,

        Defendant-Appellant.

FOR PUBLICATION
October 7, 2014
9:05 a.m.

No. 316262
Crawford Circuit Court
LC No. 12-003385-FH

Before: FITZGERALD, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(2)(b) (sexual contact with victim younger than 13), and the trial court sentenced him to concurrent terms of 2 to 15 years imprisonment. Defendant now challenges the instructions given by the court upon the jury's query of what would occur in the event it was unable to reach a verdict. Defendant contends that his convictions are against the great weight of the evidence because the complainant's testimony was contradicted and impeached. He further asserts that his minimum sentence was improperly enhanced by judicial fact-finding.

Although the trial court unnecessarily supplemented the standard deadlock jury instruction, the instruction was not coercive and does not warrant reversal. And the jury was presented with adequate information to judge the credibility of the witnesses and we may not interfere with its assessment. Moreover, this Court has already rejected the application of *Alleyne v United States*, ___ US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), to the Michigan sentencing guidelines. Accordingly, we affirm defendant's convictions and sentences.

## I. BACKGROUND

Defendant's convictions are based on the accusations of the 10-year-old daughter of his long-term, live-in girlfriend. The complainant claimed that defendant employed tickling as an opportunity to touch her breasts. She asserted that when she sat on defendant's lap, he would move her around and his penis would become "boney." The complainant further alleged that she awoke one morning and found defendant's cell phone propped up in her bedroom doorframe, set to video record. Defendant countered that the child had never liked him and falsified her allegations to get him out of her mother's life. The child complainant and her mother

-1-

corroborated defendant's claim that the child did not like defendant for reasons completely separate from the sexual contact allegations.

## II. DEADLOCK JURY INSTRUCTION

Defendant contends that the trial court committed reversible error by giving a coercive deadlock jury instruction and that defense counsel was ineffective in accepting that improper instruction.

## A. THE INSTRUCTIONS

At 11:35 a.m. on the third day of trial, the court released the jury to begin its deliberations. At 2:50 p.m., the jury asked to review the complainant's testimony and the recording was played in the courtroom. At 3:08 p.m., the jury returned to the jury room to continue its deliberations. At 4:08 p.m., the jury asked to review defendant's testimony and the same procedure was followed. The jury continued its deliberations at 5:05 p.m. Then, at 5:44 p.m., court reconvened and the trial judge stated on the record:

> All right. Counsel, . . . I talked to the two of you in chambers and I've got a note indicating, "What happens if we cannot not [sic] unanimously decide on a verdict?" So what I propose, and I think you both agree with me, is that I will give the deadlocked jury instruction 3.12. In addition, I will indicate to them that if they have reached a unanimous verdict on one of the counts, . . . the Court can accept a unanimous verdict on one of the two counts, and then invite them to also return to the jury room and direct the foreman to poll the jury in private, and then advise me only whether a majority of the jury believes a verdict can be reached or a majority does not after they've done their further deliberation. Should I just give 'em all three options at the same time?

The prosecutor answered in the affirmative. Defense counsel objected to "the third option as you just read it, is that you invite them to go back and poll" and asked that the court "maybe remove the invitation part of it."

The trial court defended its choice of instruction and the following colloquy ensued:

> *The Court:* . . . Now, this is People v Luther and that's 53 Mich App 648, it's a 1974 case. . . . I'm just looking at the Bench Book, the latest version I had, which was 2010. Now, paragraph five . . . was added in September 2011 to comply with the court rule . . . 2.513.

> \* \* \*

> *The Court:* . . . Okay, so let's take a look at what MCR 2.513(N)(4) says here. All right, that is entitled:

> "Clarifying or amplifying . . . final instructions. When it appears that a deliberating jury has reached an impasse, or is otherwise in need of assistance, the court may invite the jurors to list the issues that divide or confuse them in the

-2-

event that the judge can be of assistance in clarifying or amplifying the final instructions."

*[Defense Counsel]:* Judge, that <u>People v Luther</u> is still good law.

*The Court:* Okay. All right. Well, let's bring 'em in.

The jury returned to the courtroom for additional instruction. The court inquired:

*The Court:* Okay. Members of the jury, you had sent out a note a little bit ago indicating, "What happens if we cannot unanimously decide on a verdict?" Is that still the question?

\* \* \*

*Female Juror:* Yes, and we want to clarify that is just a question; that's not our official answer, if that makes sense. We're still deliberating.

*The Court:* Oh, okay.

*Female Juror:* We want to know what would happen if we don't come up with a verdict.

*The Court:* Okay. Well, at this point I'm supposed to give you a certain instruction, and . . . I'll give you some additional instructions. Okay? So let me give you the jury instruction.

You have returned from deliberations indicating that you believe you cannot reach a verdict. That may or . . . may not be true but I'm still gonna give this to you. I'm going to ask you to please return to the jury room and resume your deliberations in the hope that after further . . . discussion you will be able to reach a verdict.

Now, as you deliberate, please keep in mind the guidelines I gave you earlier. Remember, it is your duty to consult with your fellow jurors and try to reach an agreement, if you can do so without violating your own judgment. To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

Now, as you deliberate, you should carefully and seriously consider the views of your fellow jurors. Talk things over in a spirit of . . . fairness and frankness. Naturally there will be . . . differences of opinion. You should each not only express your opinion, but also give the facts and the reasons on which . . . you base it. By reasoning the matter out, jurors can often reach agreement.

Now, if you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you. It will then be

submitted to me. I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

Now, when you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong. However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your . . . fellow jurors think or only for the sake of reaching agreement.

Now, the other thing I want to advise you of is a couple of different things. Now, if you have reached a unanimous verdict on one count -- there are two counts here -- but you have not or cannot reach a unanimous verdict on the other count, then you can give me your verdict -- once you're sure about that, . . . -- I can accept your verdict on any count that you're unanimous on. But you have to also tell me that . . . you're unable to reach a unanimous verdict on the other count.

Now, the other suggestion I would have for you is you could re -- you know, I want you to go back and attempt to continue deliberations. But at some point if you want to come back to me, I will direct the foreperson of your jury to poll the jury in private and advise me only that a majority of the jury believes a verdict can be reached or a majority does not. Does everybody understand that? Do you want me to repeat that? You can't tell me how your voting stands; you can't tell anybody how your voting stands on anything. But you can tell me whether or not a majority of you believe that you'll be able to reach a verdict or a majority thinks that you won't be able to reach a verdict.

Now, the other option I will give you folks is if you want to continue deliberating tonight, that's fine with me. If you would prefer to come back in the morning and continue your deliberations, that would be fine. So I'm gonna let you all retire to the jury room, discuss it amongst yourselves, and send me a note out as to what you would like to do. . . .

The jury was excused to the jury room at 5:59 p.m. Defense counsel indicated that she was "[s]atisfied" with the court's instructions. Nineteen minutes later, the jury returned a verdict of guilty on both charged counts.

## B. STANDARDS OF REVIEW

"A party must object or request a given jury instruction to preserve the error for review. Absent an objection or request for an instruction, this Court will grant relief only when necessary to avoid manifest injustice." *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Where counsel expresses satisfaction with the jury instructions, however, any claim of error is deemed waived, leaving nothing for this Court's review. *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000).

Defendant contends that defense counsel's decision to approve the deadlock jury instruction, and thereby waive his claim of appellate error, rendered her performance

-4-

constitutionally deficient.  Defendant failed to preserve this challenge by seeking a new trial or requesting a *Ginther*[1] hearing below.  Our review is therefore limited to the existing record. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000).

"'[T]he right to counsel is the right to the effective assistance of counsel.'" *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970).  An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . .  Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).  With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have differed.  *Id.* at 663-664.  The defendant also must overcome the strong presumptions that his "counsel's conduct [fell] within the wide range of reasonable professional assistance," and that counsel's actions were sound trial strategy. *Strickland*, 466 U.S. at 689.

## C. PROPRIETY OF INSTRUCTION

The trial court deviated from the standard instructions in advising the jury that it could conduct an internal poll to determine whether its members believed they could reach a verdict. M Crim JI 3.11 provides the general instruction a court should provide to the jury before releasing them for deliberation:

> (3)      A verdict in a criminal case must be unanimous.  In order to return a verdict, it is necessary that each of you agrees on that verdict.  In the jury room you will discuss the case among yourselves, but ultimately each of you will have to make up your own mind.  Any verdict must represent the individual, considered judgment of each juror.

> (4)      It is your duty as jurors to talk to each other and make every reasonable effort to reach agreement.  Express your opinions and the reasons for them, but keep an open mind as you listen to your fellow jurors.  Rethink your opinions and do not hesitate to change your mind if you decide you were wrong. Try your best to work out your differences.

> (5)      However, although you should try to reach agreement, none of you should give up your honest opinion about the case just because other jurors disagree with you or just for the sake of reaching a verdict.  In the end, your vote must be your own, and you must vote honestly and in good conscience.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

In the event the jury advises the court that it is unable to reach a unanimous verdict, the court should read the jury M Crim JI 3.12, which provides:

(1)	You have returned from deliberations, indicating that you believe you cannot reach a verdict. I am going to ask you to please return to the jury room and resume your deliberations in the hope that after further discussion you will be able to reach a verdict.  As you deliberate, please keep in mind the guidelines I gave you earlier.

(2)	Remember, it is your duty to consult with your fellow jurors and try to reach agreement, if you can do so without violating your own judgment.  To return a verdict, you must all agree, and the verdict must represent the judgment of each of you.

(3)	As you deliberate, you should carefully and seriously consider the views of your fellow jurors.  Talk things over in a spirit of fairness and frankness.

(4)	Naturally, there will be differences of opinion.  You should each not only express your opinion but also give the facts and the reasons on which you base it.  By reasoning the matter out, jurors can often reach agreement.

(5)	If you think it would be helpful, you may submit to the bailiff a written list of the issues that are dividing or confusing you.  It will then be submitted to me.  I will attempt to clarify or amplify the instructions in order to assist you in your further deliberations.

(6)	When you continue your deliberations, do not hesitate to rethink your own views and change your opinion if you decide it was wrong.

(7)	However, none of you should give up your honest beliefs about the weight or effect of the evidence only because of what your fellow jurors think or only for the sake of reaching agreement.

In deciding to supplement the deadlock jury instructions, the trial court relied on *People v Luther*, 53 Mich App 648; 219 NW2d 812 (1974).  In *Luther*, the court returned the jury to the courtroom shortly before 5:00 p.m. to determine whether to recess for the day.  *Id.* at 649.  In doing so, the court asked, "Do you feel it's possible to reach a verdict by five o'clock?" and the jury foreperson responded in the negative.  *Id.* at 650.  The following ensued:

*The Court:* How many of the jurors think you can't reach a verdict by five?

(Juror Number 5 and Juror Number 12 raised their right hand.)

*The Court:* How many think you can?

(Several jurors raised their right hand.)

*The Court:* All but two.

(Addressing the foreman of the jury): Mr. Kelly, do you still think you can't?

*The foreman of the jury:* Perhaps we can.

*The Court:* Well, let's try it.

*The foreman of the jury:* Okay. [*Id.*]

Fifteen minutes later, the jury returned a guilty verdict. *Id.*

This Court advised, "Trial judges are hereafter prohibited from asking any questions of jurors the answer to which might reasonably be expected to disclose the numerical division of the jury." *Id.* Yet, this Court discerned "that no numerical division of the jury was revealed" in *Luther*. *Id.* at 651. Rather, "[t]wo jurors expressed the view that a verdict could not be reached by a given time. The balance had a contrary view or expressed none at all." *Id.* This Court concluded:

> If the orderly supervision of a docket requires that the trial court inform itself as to the probability of a verdict by some ascertainable time the procedure to be followed is to return the jury to the jury room, and direct the foreman to poll the jury in private and then advise the court only that a majority of the jury believes a verdict can be reached or a majority does not. The only virtue this solution has is that it establishes uniformity, unless of course another panel of this Court takes a contrary view or the Supreme Court speaks with finality. In this case we find no explicit revelation of the numerical division of the jury and hence no reversible error. [*Id.*]

The discourse between the court and the jury in *Luther* stands in stark contrast with that in *People v Wilson*, 390 Mich 689; 213 NW2d 193 (1973). In *Wilson*, the jury returned to the courtroom after only 90 minutes of deliberation and advised the court that it was unable to agree on a verdict. *Id.* at 690. The trial court queried, "Well, without saying for whom, how do you stand numerically?" *Id.* The response was 11 to one. The court instructed the jury to resume deliberations because "that is not very far from a verdict." *Id.* This was reversible error because "the trial judge's inquiry into the numerical division of the jury had the tendency to be coercive." *Id.* at 691, citing *Brasfield v United States*, 272 US 448; 47 S Ct 135; 71 L Ed 345 (1926). Moreover, the Supreme Court found, "The clear implication of the trial judge's remark was that only one more juror remained to be convinced in order to permit the return of a unanimous verdict." *Id.* This was reversibly coercive:

> It cannot be supposed that a jury is closer to agreement -- in point of time -- when it stands at 11 to 1 than when it stands at 8 to 4 or 6 to 6.
>
> In fact, the disposition of a single juror to stand against all of his fellows indicates a stronger conviction upon his part than if the division were more equal. Experience tells us that the holdout juror, standing alone, is often more difficult to convince, and indeed may never be persuaded to agree with the majority.

It follows that the court's characterization of the jury as being "not very far from a verdict", was impermissibly coercive with respect to the single reluctant juror. At the same time, the comment would have had the unhappy effect of confirming the 11 majority jurors in their tentative agreement.

Whenever the question of numerical division of a jury is asked from the bench, in the context of an inquiry into the progress of deliberation, it carries the improper suggestion that the state of numerical division reflects the stage of the deliberations. It has the doubly coercive effect of melting the resistance of the minority and freezing the determination of the majority. [*Id.* at 691-692.]

Three months after this Court's opinion in *Luther*, and eight months after *Wilson*, our Supreme Court considered the appropriate form of an instruction regarding jury deliberations and how to handle a deadlocked jury situation, also known as an *Allen*[2] charge. "The optimum instruction," the Court mused, "will generate discussion directed towards the resolution of the case but will avoid forcing a decision." *People v Sullivan*, 392 Mich 324, 334; 220 NW2d 441 (1974). Within the instruction given by the *Sullivan* trial court was the following:

And, if on the one hand if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one which makes no impression upon the minds of so many men equally honest, equally intelligent with himself and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth and under the sanction of the same oath.

If, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated and distrust the weight of sufficiency of that evidence which fails to carry conviction to the minds of their fellows. [*Id.* at 328-329.]

The Court declined to find this instruction "coercive per se." *Id.* at 342. To prevent future hazards, the Court adopted ABA standard jury instruction 5.4, which is substantially similar to the current M Crim JI 3.11. *Sullivan*, 392 Mich at 335, 342. And the Supreme Court warned, "Any substantial departure therefrom shall be grounds for reversible error." *Id.* at 342.

Following *Sullivan*, our Supreme Court faced many challenges to deviations in jury deliberation and deadlock jury instructions. In *People v Goldsmith*, 411 Mich 555, 558; 309 NW2d 182 (1981), the trial court added a variant of the deadlock jury instruction as part of its main instructions before deliberations. The court included an objectionable supplement, however:

---

[2] *Allen v United States*, 164 US 492; 17 S Ct 154; 41 L Ed 528 (1896).

Let me remind you that when a jury is unable to reach a verdict, the jury has not accomplished its purpose. A jury unable to agree, therefore, is a jury which has failed in its purpose. Each time such an indecisive jury fails, ammunition is given to those who oppose the jury system as we know it, a system that requires a unanimous vote of all 12 jurors for either conviction or acquittal. As you deliberate, please bear this in mind. [*Id.* at 558.]

This was a "substantial departure" from the ABA instruction approved in *Sullivan* and amounted to reversible error. *Id.* at 560-561. It was "a call for the jury, as part of its civic duty, to reach a unanimous verdict and contains the message that a failure to reach a verdict constitutes a failure of purpose." *Id.* at 561.

In *People v Hardin*, 421 Mich 296, 314; 365 NW2d 101 (1984), the Supreme Court clarified that "an undue tendency of coercion" is the core of any "substantial departure" inquiry, not a deviation from the instruction language approved in *Sullivan*. An instruction is not coercive per se even if it varies in substance from that approved in *Sullivan*. *Id.* at 321. The Court enumerated that substantial departures include those that "cause a juror to abandon his conscientious dissent and defer to the majority solely for the sake of reaching agreement," "require[], or threaten to require[], the jury to deliberate for an unreasonable length of time or for unreasonable intervals," or admonish a jury that the inability to reach a unanimous verdict amounts to a failure of one's civic duty. *Id.* at 316. And the instruction must be read in context and with the instructions as a whole to determine if its effect was to coerce or "to stress the need to engage in full-fledged deliberation." *Id.* at 321.

In *People v Pollick*, 448 Mich 376, 380; 531 NW2d 159 (1995), the trial court instructed the jury before deliberations that it had two duties: to choose a foreperson and "to agree upon a unanimous verdict." After only 39 minutes of deliberation, the jury convicted the defendant of the greatest charged offense. *Id.* at 378. This Court found this instruction to be a reversibly coercive substantial departure from the standard instructions. *Id.* at 380-381. The Supreme Court reinstated the jury conviction:

It requires no special insight to see that there is a greater coercive potential when an instruction is given to a jury that already believes itself deadlocked. Instructions given to a jury that has not yet begun to deliberate are less likely to weigh on a dissenting juror, or to be understood as a request that a particular dissenting juror abandon the view that is preventing an otherwise unanimous jury from reaching its verdict.

In the present case, the instruction preceded the jury's deliberations, and thus the coercive potential was reduced. Further, this case does not involve any improvidently added language, such as was found in *Goldsmith*. Indeed, the challenged instruction -- that the jury had a "duty" to return a unanimous verdict -- would be entirely unremarkable if this Court had not adopted in *Sullivan* a prophylactic rule designed to cure a problem that did not even arise in the present case. Probably for that reason, there was no objection from defense counsel.

We said in *Sullivan* that courts are to give an instruction that is substantially in the form of CJI2d 3.11. That is a sound instruction, and we continue to direct that it be given. However, the teaching of *Hardin* is that an instruction on this subject requires reversal only if it has an "undue tendency of coercion," not if it merely fails to contain the same words as the ABA standard.

In the context of this case, considering the timing and full content of the instructions, we see no significant possibility that the jury found the instruction to be unduly coercive. The whole jurisprudence of *Sullivan*, including the cases and instructions that followed, is based on the need to avoid coercing jurors who are having a difficult time reaching a decision. Here, no such problem had arisen at the time of the instruction, nor did the jurors ever experience such a difficulty. Their deliberations were brief, and they did not choose any of the intermediate verdicts that were offered. [*Id.* at 385-386.]

Here, the challenged instruction was given mid-deliberation and therefore had heightened coercive potential. *Id.* at 385. And the "suggestion" that the jury conduct an internal poll to ascertain whether a majority believed a verdict could be reached clearly deviated from the language of M Crim JI 3.11 and 3.12 and the ABA instruction adopted in *Sullivan*, 392 Mich at 335, 342.

However, the instruction was not a reversible "substantial departure." It did not have the potential to cause a juror to bend his or her will to that of the majority simply for the sake of reaching an agreement. See *Hardin*, 421 Mich at 316. Rather, after giving the standard deadlock jury instructions, the trial court gave the jury the option of retiring for the day or of continuing deliberations that evening. If the jury found itself still unable to agree, it could conduct an internal poll to determine whether a majority believed a unanimous verdict could never be reached. The additional instruction in no way sought to reveal the numerical split of the jury as in *Wilson*, 390 Mich 689. Accordingly, the provision of this instruction was not reversible error, and defendant can establish no prejudice as a result of defense counsel's waiver.

Yet, we do not condone the use of the challenged instruction. Our Supreme Court has made clear in the years since *Luther* that the safest course to avoid juror coercion is to read the standard jury instructions. See *Pollick*, 448 Mich at 386; *Goldsmith*, 411 Mich at 560-561; *Sullivan*, 392 Mich at 342. There was no need to deviate in this case, especially as the jury foreperson informed the court that the jury was not actually deadlocked. Accordingly, we recommend that the trial court avoid this additional instruction in the future.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant also contends that the jury's guilty verdicts were against the great weight of the evidence. Defendant failed to preserve his challenge by seeking a new trial below. *People v Cameron*, 291 Mich App 599, 618; 806 NW2d 371 (2011). We would generally review a great weight challenge to determine "whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id.* at 617. Absent a motion for new trial, our review is limited to plain error affecting defendant's substantial rights. *Id.* at 618.

When analyzing a great weight challenge, no court may sit as the "13th juror" and reassess the evidence. *People v Lemmon*, 456 Mich 625, 636; 576 NW2d 129 (1998). Therefore, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *Id.* at 643 (quotation marks and citation omitted). To support a new trial, the witness testimony must "contradict[] indisputable physical facts or laws," be "patently incredible or def[y] physical realities," be "so inherently implausible that it could not be believed by a reasonable juror," or have been "seriously impeached" such that "the case [was] marked by uncertainties and discrepancies." *Id.* at 643-644 (quotation marks and citations omitted).

The evidence in this case was not so incredible or contradicted as to warrant judicial interference. The jury was well aware that the complainant had never liked defendant. The complainant even told the forensic interviewer in great detail about her dislike of defendant. The complainant's mother corroborated that the complainant had disliked defendant since the onset of their relationship. And defense counsel posited that this dislike led the complainant to fabricate the charges. The jury rejected this defense and deemed credible the complainant's accusations. We may not interfere with that assessment.

## IV. SENTENCING

Finally, defendant argues that the trial court impermissibly increased the "floor" of defendant's minimum sentencing range through judicial fact-finding, contrary to the rule announced in *Alleyne v United States*, 570 US ___; 133 S Ct 2151, 2155; 186 L Ed 2d 314 (2013). In that case, the Supreme Court held that any fact that increases a mandatory minimum sentence is an "element" of the crime that must be submitted to the jury. However, as this Court recently held in *People v Herron*, 303 Mich App 392, 403; 845 NW2d 533 (2013), *Alleyne* does not implicate Michigan's sentencing scheme because "judicial fact-finding within the context of Michigan's sentencing guidelines [is] not used to establish the mandatory minimum floor of a sentencing range." Accordingly, we reject this claim of error.

We affirm.

/s/ E. Thomas Fitzgerald
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause

-11-