# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

THOMAS DAMARR DARBY,

       Defendant-Appellant.

UNPUBLISHED
June 16, 2015

No. 317576
Wayne Circuit Court
LC No. 13-003186-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MICHAEL ANTHONY DARBY

       Defendant-Appellant.

No. 317849
Wayne Circuit Court
LC No. 13-003186-FC

---

Before: STEPHENS, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendants Michael Darby and Thomas Darby were tried jointly, before a single jury. Both defendants were convicted of armed robbery, MCL 750.529, and Michael was also convicted of assault with intent to do great bodily harm less than murder, MCL 750.84, two counts of felonious assault, MCL 750.82, and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced Michael to concurrent prison terms of 225 months to 40 years for the armed robbery conviction, 6 to 10 years for the assault with intent to do great bodily harm conviction, and two to four years for each felonious assault conviction, to be served consecutive to a two-year prison term for the felony-firearm conviction. The court sentenced Thomas as a fourth habitual offender, MCL 769.12, to a term of 30 to 45 years' imprisonment. Both defendants appeal as of right. We affirm in both appeals.

-1-

## I. BACKGROUND

On March 25, 2013, two men robbed Stanley Sowa outside his home in Detroit. Sowa, who was 80 years old at the time of trial, was with his two grandnieces. As Sowa stopped on the sidewalk to pick up a bag of candy that one of his nieces had dropped, a man grabbed Sowa's arm, wrestled him to the ground, and took his wallet from his pocket. Another man, with a silver-colored gun, shot Sowa in the head. Both men fled after the robbery. Although Sowa could not identify either of the two men, Sowa's grandnieces both identified Michael as the gunman and Thomas as the man who wrestled with Sowa. One of the grandnieces also identified the two defendants in live lineups before trial.

The prosecution presented other-acts evidence that Michael fired a gunshot in a similar robbery against a woman with a young child the following day where he was accompanied by an unidentified associate. The court admitted the evidence over objection for its relevancy in establishing Michael's scheme or plan and his identification as one of the persons who robbed Sowa, and to show Michael's intent, specifically that he shot Sowa purposefully and not by accident. The court instructed the jury that this evidence was admitted and could be considered only against Michael.

Both defendants were arrested on March 27, 2013, after a vehicle occupied by three men crashed into a garage during a police chase. Officer Randolph Sturley identified both Thomas and Michael as passengers of the vehicle. Detroit Police Officer Andrew Berry testified that Thomas was arrested in the back yard of a home during a search for the men.

Thomas testified at trial and denied any involvement in the charged robbery. He also denied being in the vehicle involved in the police chase, and testified that he was arrested in front of a home while walking to a gas station. Thomas denied being related to Michael, and denied even knowing Michael before he and Michael were both charged with robbing Sowa.

## II. DOCKET NO. 317849 (MICHAEL DARBY)

### A. OTHER-ACTS EVIDENCE

Michael argues that the trial court erred in admitting the other acts evidence of the March 26 robbery. Although Michael argues on appeal that the evidence was not admissible for any purpose, he conceded at trial that the evidence was admissible against him because of its relevancy to the issues of identity and a common scheme or plan. He objected to its admission only for the purpose of proving intent. An objection to evidence on one ground is insufficient to preserve an appellate attack on a different ground. *People v Asevedo,* 217 Mich App 393, 398; 551 NW2d 478 (1996). Further, where defense counsel affirmatively approves of the trial court's action, any error is waived. *People v Carter,* 462 Mich 206, 215-216; 612 NW2d 144 (2000); see also *People v Kowalski,* 489 Mich 488, 503; 803 NW2d 200 (2011). Because Michael's counsel expressly agreed that the evidence was admissible to establish Michael's identity or to show a common scheme or plan, any error in the admission of the evidence for those purposes was waived. A waiver extinguishes any error. *Carter,* 462 Mich at 216. Thus, it is only necessary to decide whether the trial court erred in admitting the other-acts evidence for the purpose of proving Michael's intent. We review the trial court's decision for an abuse of

discretion. *People v Jackson,* 292 Mich App 583, 594; 808 NW2d 541 (2011). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger,* 278 Mich App 210, 217; 749 NW2d 272 (2008).

Under MRE 404(b), the trial court initially decides whether the other-acts evidence is relevant for a purpose other than a "character to conduct or propensity theory." *People v Sabin (After Remand),* 463 Mich 43, 55; 614 NW2d 888 (2000). A court must determine whether the evidence, under a proper theory of admissibility, has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401; see also *Sabin,* 463 Mich at 60. What is relevant and material is determined in light of the relationship of the evidence to the elements of the charges, the prosecutor's theories of admissibility, and the defendant's theory of defense. *Sabin,* 463 Mich at 60. A defendant's general denial will place all elements of the charge at issue. *Id.* Where other-acts evidence is admissible under a permissible theory of relevance, a court may still exclude the evidence under MRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* at 58. Upon request, the trial court may provide a limiting instruction under MRE 105 to minimize any potential for prejudice. MRE 105; *Sabin,* 463 Mich at 56.

With respect to the issue of intent, Michael's reliance on the larcenous intent for armed robbery is misplaced because the prosecutor did not offer the evidence to establish a larcenous intent. Rather, the evidence was offered for its probative value in determining whether Michael fired the gun intentionally and purposefully, rather than by accident. This was a contested issue at trial because one of the defense theories was that the gun discharged accidentally during a struggle. Evidence that Michael committed a similar robbery the next day against a female victim who was also accompanied by a child, and that he fired his gun during that offense, was probative of whether Michael purposefully fired his gun during the charged offense. The admission of the evidence for its relevancy to the issue of intent, as well as identity and a scheme or plan, was not unfairly prejudicial to Michael because the trial court gave an appropriate instruction advising the jury on the limited permissible purposes of the evidence. "[J]urors are presumed to follow their instructions." *People v Waclawski,* 286 Mich App 634, 674; 780 NW2d 321 (2009). Accordingly, the trial court did not abuse its discretion in admitting the evidence.

## B. SENTENCING

Michael also challenges the trial court's assessment of 10 points for OV 10 of the sentencing guidelines. As explained in *People v Hardy,* 494 Mich 430, 438; 835 NW2d 340 (2013):

> Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo.

OV 10 is concerned with the exploitation of a vulnerable victim. MCL 777.40. "Vulnerability" is defined as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). "Exploit" means "to manipulate a victim for selfish or unethical purposes." MCL 777.40(3)(b). OV 10 provides for a score of 10 points where "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or authority status." MCL 770.40(1)(b). A score of 15 points is appropriate if there was predatory conduct, MCL 770.40(1)(a), and a lesser score of 5 points where an offender "exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious," MCL 777.40(1)(c). The mere existence of one or more of these factors does not automatically equate with vulnerability. MCL 777.40(2). Points should be assessed under OV 10 only where it is readily apparent that the victim was susceptible to injury, physical restraint, persuasion, or temptation, and that vulnerability was exploited. *People v Cannon,* 481 Mich 152, 158; 749 NW2d 257 (2008).

"A sentencing court may consider all record evidence before it when calculating the [sentencing] guidelines[.]" *People v Johnson,* 298 Mich App 128, 131; 826 NW2d 170 (2012). At sentencing, the prosecutor described Sowa, who was 80 years old at the time of trial, and was a frail, thin man. Michael has not established any clear error in the trial court's finding that Sowa's susceptibility to physical restraint was evident from his age. That vulnerability was a factor in committing the crime because one of the defendants wrestled Sowa to the ground to take his wallet. A preponderance of the evidence supports that Sowa's advanced age made him vulnerable, and that defendants exploited that vulnerability during the offense. Thus, the trial court did not err in scoring 10 points for OV 10.

## III. DOCKET NO. 317576 (THOMAS DARBY)

### A. MOTION FOR SEPARATE JURIES

Thomas challenges the trial court's denial of his request for separate juries. Thomas argues that the use of separate juries was mandatory to avoid the prejudicial effect of the other-acts evidence, which was admissible against Michael only. The use of separate juries is a partial form of severance, which is evaluated under the same standards as a motion for separate trials. *People v Hana,* 447 Mich 325, 331; 524 NW2d 682 (1994). We review a trial court's decision to join or sever multiple defendants for trial pursuant to MCR 6.121(D) for an abuse of discretion. *Id.* Relevant factors include the "timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial." MCR 6.121(D).

To mandate severance under MCR 6.101(C), Thomas was required to provide an affidavit or other offer of proof that clearly and affirmatively demonstrated that severance was necessary to rectify the potential for prejudice. *Hana,* 447 Mich at 346. One means of showing prejudice is to show that evidence would not be admissible if the defendant was tried alone. *Id.* at 346 n 7. The use of dual juries or proper jury instructions is an appropriate means for alleviating prejudice when defendants are tried jointly. *Id.* at 351. Jurors are generally presumed to follow their instructions. *Waclawski,* 286 Mich App at 674.

Thomas's counsel did not argue that separate juries were required to avoid prejudice to his substantial rights, but rather expressed a preference for separate juries as opposed to a jury instruction or a stipulation to address his concern with the other-acts evidence against Michael. Thomas's counsel was concerned that the jury might think that Thomas was Michael's accomplice in that robbery, even though Thomas was not identified and his name was not mentioned. However, in addition to the fact that the other-acts evidence did not indicate that Thomas was involved in the robbery of Miller, the trial court agreed to instruct the jury at trial that the evidence could only be considered against Michael, and not against Thomas. Under these circumstances, Thomas failed to affirmatively establish that his substantial rights would be prejudiced by a joint trial before a single jury. Thus, separate juries were not mandatory under MCR 6.121(C). We further hold that the trial court did not abuse by declining to order separate juries pursuant to MCR 6.121(D). As indicated, jury instructions are an appropriate means of alleviating any prejudice. *Hana,* 447 Mich at 351. The court did not abuse its discretion in determining that the other-acts evidence admitted against Michael could be addressed through appropriate jury instructions. The trial court instructed the jury immediately before the other-acts evidence was admitted, and again before jury deliberations began, that the other-acts evidence was admitted only against Michael and could not be considered in any way when deciding Thomas's guilt or innocence. Because these jury instructions were sufficient to alleviate any prejudice, we find no basis for relief.

## B. PROSECUTORIAL MISCONDUCT

Thomas next argues that misconduct by the prosecutor denied him a fair trial. When considering a claim of prosecutorial misconduct, this Court will examine the entire record to determine if the defendant was denied a fair and impartial trial. *People v Dobek,* 274 Mich App 58, 64; 732 NW2d 546 (2007). Where the claim is unpreserved, a defendant must establish plain error. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013). Defendant must show: "(1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Vaughn,* 491 Mich 642, 664-665; 821 NW2d 288 (2012), citing *People v Carines,* 460 Mich 750, 763; 597 NW2d 130 (1999).

Thomas first argues that the prosecutor engaged in misconduct by cross-examining him regarding the fact that he and Michael have the same last name, without first attempting to introduce other evidence to establish a familial relationship between them. In substance, defendant's challenge to the prosecutor's cross-examination appears to be an evidentiary issue framed as a claim of prosecutorial misconduct. *Dobek,* 274 Mich App at 70. A prosecutor's good-faith effort to admit evidence does not constitute misconduct, so long as the attempt does not prejudice the defendant. *People v Noble,* 238 Mich App 647, 660-661; 608 NW2d 123 (1999).

"A witness may be cross-examined on any matter relevant to any issue in the case, including credibility." MRE 611(c). A party may elicit "anything tending or which may tend to contradict, weaken, modify or explain the testimony on direct examination or which tends or may tend to elucidate the testimony or affect the credibility of the witness." *People v Salimone,*

265 Mich 486, 499-500; 251 NW 594 (1933); see also *People v Bell,* 88 Mich App 345, 349; 276 NW2d 605 (1979).

The trial court properly overruled Thomas's relevancy objection to the prosecutor's inquiry, on cross-examination, regarding Thomas's relationship to Michael, who had the same last name. Whether Thomas and Michael were related, or otherwise knew each other, was a relevant issue at trial because it was probative of whether they acted together to rob Sowa. Moreover, it was undisputed that they shared the same last name, and whether that was because of a familial relationship was a disputed issue at trial. Before the prosecutor's cross-examination, Thomas's counsel had informed the jury in his opening statement that it would be instructed that the fact that both defendants had the same last name was not evidence that they were related, or that they know each other. In addition, the trial court had given a preliminary instruction to the jury that "the fact that they have the same last name is not evidence that they're related. It's not evidence that they were associated with each other, and it's not evidence that either one is guilty."

It was not necessary that the prosecutor have other evidence of a familial relationship before asking Thomas how he knew Michael. At the time of the prosecutor's cross-examination of Thomas, evidence had already been presented linking the two defendants together. Witnesses had testified that both defendants participated in the robbery of Sowa, and that they were together again two days later when they were arrested. Thomas's testimony on direct examination essentially denied that he was with Michael on either occasion. The prosecutor's elicitation of Thomas's testimony that he had the same last name as Michael added nothing to what the jury already knew based on the trial evidence. Moreover, in light of the testimony linking the two defendants, and Thomas's testimony on direct examination that he did not know Michael before his arrest, it was not improper for the prosecutor to explore the issue of Thomas's relationship with Michael on cross-examination. The prosecutor did not lack a good-faith basis for her line of inquiry into the defendants' relationship, and the trial court did not abuse its discretion in overruling Thomas's relevancy objection, MRE 401.

Although the trial court sustained defense counsel's subsequent objection to the prosecutor asking Thomas whether it was a coincidence that both defendants had the same last name, Thomas has failed to establish that the prosecutor's question constituted misconduct requiring reversal. Cf. *Dobek,* 274 Mich App at 69-70 (prosecutor's admonishment to the defendant on cross-examination not to be disingenuous, while argumentative, did not constitute misconduct or deny the defendant a fair trial). Indeed, the essence of Thomas's testimony was that it was mere coincidence that he and Michael had the same last name. Thomas suggested on redirect examination by his counsel that this was a factor that led to his arrest. Thomas testified that he was not related to Michael, but that a police officer pulled a gun on him after being told his last name.

Thomas also challenges the prosecutor's comments in closing argument about the two defendants having the same last name. This claim is unpreserved because Thomas did not object to these remarks at trial. *People v Fyda,* 288 Mich App 446, 460; 793 NW2d 712 (2010). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest terms." *Dobek,* 274 Mich App at 66. Examined in context, the prosecutor's remarks did not plainly suggest that Thomas and Michael have a familial

relationship, as claimed by Thomas in this appeal, but rather addressed the misfortunate or "bad luck" indicated by Thomas's version of the arrest that led to the charges against him. Moreover, to the extent that the prosecutor's remarks could be considered improper, a timely objection and curative instruction could have alleviated any perceived prejudice. *Unger,* 278 Mich App at 235; *Dobek,* 274 Mich App at 66. Indeed, even without an objection, the trial court instructed the jury that "[t]he lawyer's statements and arguments and any commentary are not evidence" and "[y]ou should only accept things the lawyers say that are supported by the evidence or my [sic] your own common sense and general knowledge." The court also instructed the jury that "lawyer's questions to the witnesses . . . are also not evidence." With respect to the similarity of defendants' names, the jury was also instructed that "[t]he fact that both defendants have the same last name is not evidence that they are related to one another, that they were associated with one another or that either one is guilty." Examined as a whole, the jury instructions were sufficient to dispel any prejudice and to protect Thomas's substantial rights. Therefore, this unpreserved issue does not require reversal.

## C. DEADLOCKED-JURY INSTRUCTIONS

Thomas also challenges the trial court's handling of a jury note, written shortly before deliberations were scheduled to end on the first day of the deliberations, which indicated that the jury was finished with deliberations. Thomas argues that the trial court failed to recognize that the jury was deadlocked, and compounded this error by giving a coercive jury instruction directing the jury to leave for the day and "to come back on Monday morning at 8:30 and continue deliberations at that time." However, defense counsel's affirmative approval of the trial court's response to the jury's note waived any substantive claim of instructional error. *Kowalski,* 489 Mich at 503; *Carter,* 462 Mich at 216. Therefore, we limit our review of this issue to Thomas's alternative claim that defense counsel was ineffective for not objecting to the trial court's instruction.

Because Thomas did not raise this claim in a motion for a new trial or request for a *Ginther*[1] hearing, our review is limited to errors apparent from the record. *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). Ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v LeBlanc,* 465 Mich 575, 579; 640 NW2d 246 (2002). A defendant must establish that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Vaughn,* 491 Mich at 669.

Thomas's ineffective assistance of counsel claim fails because, even assuming that counsel should have objected to the trial court not giving a supplemental deadlocked-jury instruction, rather than acquiescing in deliberations continuing, Thomas has failed to establish prejudice. "Claims of coerced verdicts are reviewed case by case, and all of the facts and circumstances, including the particular language used by the trial court, must be considered." *People v Vettese,* 195 Mich App 235, 244; 489 NW2d 514 (1992).

---

[1] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

"Jury instructions are to be read as a whole rather than extracted piecemeal to establish error." *Waclawski,* 286 Mich App at 675. Where a jury is deadlocked, an optimum supplemental instruction "will generate discussion towards the resolution of the case but will avoid forcing a decision." *People v Sullivan,* 392 Mich 324, 334; 220 NW2d 441 (1974). As discussed in *People v Galloway,* 307 Mich App 151, 163; 858 NW2d 520 (2014), application held in abeyance ___ Mich ___ (2015), after the Supreme Court decided *Sullivan,* it "faced many challenges to deviations in jury deliberation and deadlocked-jury instructions." These instructions are presently contained in M Crim JI 3.11 and M Crim JI 3.12, *id.* at 158-159, and at the time of Thomas's trial were set forth in former CJI2d 3.11 and CJ2d 3.12.

In *Galloway,* 307 Mich App at 157, 166, when addressing a defendant's ineffective assistance of counsel claim arising from his counsel's approval of a deadlocked-jury instruction that deviated from the standard jury instruction by suggesting that the jury conduct an internal poll, this Court reiterated that the safest course to avoid juror coercion is for a court to read the standard jury instructions. This Court found that the defendant was not prejudiced by his counsel's waiver of the standard instruction, because the instruction "did not have the potential to cause a juror to bend his or her will to that of the majority simply for the sake of reaching a verdict." *Id.* In this case, the trial court's initial instructions before deliberations began conformed to CJI2d 3.11. The jury was also instructed:

> There's no time limit on the deliberations, take all the time you feel is necessary. If you want to take a break some time during the day to go outside, we'll probably send you to lunch around 12:30, 1:00, no later than 1:00. I'll try to send you to lunch at the same time we're all taking a break here so we can all take our break at the same time. *And we'll go n [sic] later 4:00 today. And if you haven't reached a verdict I'll have you come back Monday.* [Emphasis added.]

As indicated in *Vettese,* 195 Mich App at 245, it is not coercive for a court to indicate that the jury will have to return for deliberations on another day if they do not reach a verdict by a specified time.

The jury was released for deliberations at 10:00 a.m. on a Friday. It sent out two notes in the afternoon. The first note indicated that the jury had reached a decision on certain counts, but disagreed on other counts. The second note, which was sent shortly before deliberations were scheduled to end by 4:00 p.m. specified that the jury was finished with deliberations. After the trial court determined, with the agreement of all parties, that a verdict had not been reached on all counts for Michael, or on the one count for Thomas, the court informed the jury that deliberations would resume on Monday.

Examined in context, the trial court's instruction that "I'm going to ask you to come back on Monday morning at 8:30 and continue deliberations at that time" was nothing more than an instruction that effectuated the trial court's earlier instruction that the jury would have to return on Monday if it did not reach a verdict by 4:00 p.m. The trial court did not suggest that the jury would have to reach a verdict on Monday. Rather, the court indicated that if the jury had any questions, it should write a note and "[w]e'll just deal with it on Monday." The jury, in fact, sent out additional notes for the trial court after deliberations began on Monday. The jury requested transcripts of certain testimony, but the court instructed the jurors to rely on their collective

memories and "if you have a continued — continue to feel the need for transcript in the future you can make another request." The jury placed its verdict on the record at 12:58 p.m.

The court's jury instruction did not have the potential to cause a juror to bend his or her will simply for the sake of reaching an agreement. Because we find no prejudice, Thomas's ineffective assistance of counsel claim necessarily fails. *Vaughn,* 491 Mich at 669.

### D. MOTION FOR NEW TRIAL

Thomas also challenges the trial court's denial of his motion for a new trial after this Court granted his motion to remand. Thomas argues that a new trial was warranted because he established at a *Ginther* hearing that defense counsel was ineffective for failing to call alibi witnesses in support of his own testimony at trial. Thomas argues that his sister provided credible testimony that he was with her while she was picking up her son from school at the time Sowa was robbed.

Defense counsel has a duty to prepare, investigate, and present all substantial defenses, that is, a defense that might make a difference in the outcome of the trial. *People v Kelly,* 186 Mich App 524, 526; 465 NW2d 569 (1990). Counsel must make a reasonable investigation, or make a reasonable decision that a particular investigation is unnecessary. *People v Trakhtenberg,* 493 Mich 38, 52; 826 NW2d 136 (2012). "In assessing the reasonableness of an attorney's investigation, however, a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v Smith,* 539 US 510, 527; 123 S Ct 2527; 156 L Ed 2d 471 (2003). "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant." *Strickland v Washington,* 466 US 668, 691; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant claiming that defense counsel was ineffective for failing to raise a particular defense must show that he made a good-faith effort to avail himself of the defense and that the defense was substantial. *In re Ayres,* 239 Mich App 8, 22; 608 NW2d 132 (1999).

Although Thomas testified at trial, he did not offer any testimony regarding a possible alibi. The trial court considered this omission, along with other evidence, including its assessment of the credibility of the witnesses who testified at the *Ginther* hearing, in finding that Thomas failed to inform defense counsel of an alleged alibi, and in finding that his proffered alibi testimony was not credible. Where a factual question depends on the credibility of witnesses or the weight of evidence, an appellate court defers to the trial court's superior opportunity to evaluate these matters. *People v Sexton (After Remand),* 461 Mich 746, 752; 609 NW2d 822 (2000). Giving deference to the trial court's assessment of credibility in this case, we find no clear err in the trial court's finding that Thomas failed to provide information regarding a potential alibi defense to defense counsel. Thus, Thomas did not make a good-faith effort to avail himself of an alibi defense. And without knowledge of a potential alibi to investigate, counsel's failure to investigate an alibi defense or call alibi witnesses cannot be deemed objectively unreasonable. Therefore, Thomas is not entitled to a new trial on this ground.

Thomas also argues that defense counsel was ineffective for failing to introduce evidence, specifically the testimony of his mother, to establish that he and Michael did not have a

familial relationship. As the trial court found, however, Thomas's mother would only have testified that defendants were not related as far as she knew. She would not have been able to rule out that there was some type of relationship. Regardless, the prosecutor presented other evidence to establish an association between Thomas and Michael, including the testimony of Sowa's grandnieces, who identified both defendants as the persons who robbed Sowa, and the testimony of the police officers who arrested Thomas and Michael in the same car two days later.

And regardless of who drafted the jury instruction that precluded the jury from inferring a relationship or association from the mere fact that the two defendants had the same last name, considering that this instruction was included in the preliminary jury instructions given on the first day of the trial, we find no support for Thomas's argument that defense counsel belatedly decided to rely on the instruction to address the fact that both defendants had the same last name as a mere afterthought. And because the jury may be presumed to have followed its instructions, *Waclawski,* 286 Mich App at 674, and considering the other evidence of record, Thomas has failed to establish that his mother's testimony would have provided him with a substantial defense. Accordingly, we reject this ineffective assistance of counsel claim.

### E. AMENDMENT TO THE MOTION FOR NEW TRIAL

Thomas also challenges the trial court's denial of his request for a new trial based on newly discovered evidence. A trial court's decision on a motion for a new trial based on newly discovered evidence is reviewed for an abuse of discretion. *People v Grissom,* 492 Mich 296, 312; 821 NW2d 50 (2012); *People v Cress,* 468 Mich 678, 691; 664 NW2d 174 (2003). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. *Unger,* 278 Mich App at 217. Any factual findings made by the trial court are reviewed for clear error. *Cress,* 468 Mich at 691. A defendant seeking a new trial based on newly discovered evidence must show "(1) 'the evidence itself, not merely its materiality, was newly discovered'; (2) 'the newly discovered evidence was not cumulative'; (3) 'the party could not, using reasonable diligence, have discovered and produced the evidence at trial'; and (4) the new evidence makes a different result probable on retrial." *Id.* at 692 (citations omitted).

Thomas's motion was based on Michael's "general affidavit" in which Michael averred:

He didn't commit, no crime, on March 25th. We were not together. I feel this innocent man shouldn't be put in prison for something he didn't do. This person didn't commit this crime with me at all. I did it with some one [sic] else.

The affidavit is dated July 29, 2013, the date Thomas was sentenced, but the notary signature is dated August 9, 2013, two days after Michael was sentenced.

Thomas testified at the *Ginther* hearing that he supplied defense counsel with this same writing at trial, except it had a different date. The trial court concluded from this testimony that the affidavit was not newly discovered evidence. "Michigan caselaw makes clear that evidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial." *People v Rao,* 491 Mich 271, 281; 815 NW2d 105 (2012). Because Thomas's

testimony supports the trial court's finding that the proposed evidence was not newly discovered, the court did not abuse its discretion in denying a new trial on this ground.

To the extent that Thomas suggests that Michael's post trial testimony "adopting" the affidavit constitutes the newly discovered evidence, we disagree. Michael did not come forward with new evidence by indicating that the contents of the affidavit were true, but rather tried to explain the vague averments that Thomas claimed gave him reason to conclude that Michael could provide exculpatory testimony. Moreover, Michael attempted to explain the vague averments in the affidavit by indicating that they pertained to the robbery of Sowa, but at the same time explaining that he was trying to say that he had no knowledge of the robbery because he did not commit it. His testimony does not satisfy the *Cress* requirement that the evidence itself be newly discovered.

Thomas's treatment of Michael's post trial testimony as presenting a credibility issue is also unavailing. Although newly discovered evidence that impeaches a witness's trial testimony may be grounds for a new trial, *Grissom,* 492 Mich at 312-315, Michael expressly waived his right to testify at trial. Accordingly, there was no trial testimony to impeach and no newly discovered evidence that could be offered for this purpose.

We also reject Thomas's alternative claim that defense counsel was ineffective for not investigating that Michael could provide exculpatory testimony and, if Michael refused to testify on Fifth Amendment grounds, for not offering his written statement as evidence under MRE 804(b)(3). Even assuming that Thomas's counsel gave the affidavit purportedly signed by Michael to defense counsel, and that a proper foundation for authenticating it could have been established without Michael's testimony, an essential requirement of MRE 804(b)(3) is that the statement so far tend to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true. Whether a statement tends to subject the declarant to criminal liability depends on "whether the statement would be probative of an element of a crime in a trial against the declarant, and whether a reasonable person in the declarant's position would have realized the statement's incriminating element." *People v Barrera,* 451 Mich 261, 272; 547 NW2d 280 (1996). Thomas has failed to establish that the vague allegations regarding a March 25, 2013 crime would have been admissible under MRE 804(b)(3) to establish that Michael was one of the individuals who robbed Sowa. Accordingly, Thomas's counsel was not ineffective for not attempting to introduce the evidence. Counsel need not take futile actions. *Unger,* 278 Mich App at 256.

And even assuming that that Michael would have been willing to testify at trial, Michael's testimony at the *Ginther* hearing supports the trial court's finding that Michael would not have been able to provide testimony to exculpate Thomas. Because Michael was unwilling to admit his involvement in the Sowa robbery, he could not have credibly denied Thomas's involvement. Thomas has not established that defense counsel was ineffective. *Vaughn,* 491 Mich at 669.

## F. SENTENCING ISSUES

Thomas also challenges the trial court's assessment of 25 points for OV 3 and 10 points for OV 10 of the sentencing guidelines for armed robbery.

MCL 777.33(1)(c) provides for a score of 25 points for OV 3 where a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). The prosecution was not required to present medical testimony to prove either type of injury. *People v McCuller,* 479 Mich 672, 697 n 19; 739 NW2d 563 (2007). Sowa testified at trial that he continues to suffer dizziness as result of the gunshot wound that grazed his head. Sowa further explained in a victim impact statement that the dizziness limits or prevents him from doing functions he did before, including driving, riding a bicycle, and walking. The trial court found that the gunshot wound did not penetrate Sowa's skull, but considered Sowa's advanced age and week-long hospitalization when determining that Sowa had sustained a life-threatening injury. Although MCL 777.33(1)(c) only required the trial court to find one of the specified injuries, we conclude that the evidence supports both a life-threatening injury and a permanent incapacitating injury. Thus, the trial court did not err in scoring 25 points for OV 3. *Hardy,* 494 Mich at 438.

Thomas waived any challenge to the trial court's assessment of 10 points for OV 10 by objecting to the prosecutor's request to increase the score for OV 10 from 10 to 15 points and remarking, "I think it's correctly scored as is." *Carter,* 462 Mich at 216. We reject Thomas's alternative claim that defense counsel was ineffective for not challenging the 10-point score. As discussed in part II(B) with respect to Michael's appeal, a preponderance of the evidence supports that Sowa's advanced age made him vulnerable, and that the defendants exploited that vulnerability during the offense, thereby supporting a 10-point score for OV 10. Counsel was not required to make a futile objection. *Unger,* 278 Mich App at 256.

Lastly, Thomas argues that the trial court violated his rights under the Sixth and Fourteenth Amendment by engaging in judicial fact-finding to assess points for OV 3 and OV 10, contrary to *Alleyne v United States,* 570 US ___ ; 133 S Ct 2151; 186 L Ed 2d 314 (2013). Because Thomas did not raise this issue in the trial court, he bears the burden of showing a plain error affecting his substantial rights. *Vaughn,* 491 Mich at 664-665. Thomas concedes that this Court addressed and rejected this same argument in *People v Herron,* 303 Mich App 392; 845 NW2d 533 (2013), application held in abeyance ___ Mich ___; 846 NW2d 924 (2014). In *Herron*, this Court concluded that *Alleyne* does not apply to the scoring of Michigan's sentencing guidelines. Unless and until our Supreme Court decides otherwise, we are bound to follow *Herron.* MCR 7.215(J)(1); see also *People v Duenaz,* 306 Mich App 85, 114; 854 NW2d 531 (2014), lv pending. Accordingly, there was no plain error.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Stephen L. Borrello
/s/ Michael F. Gadola