# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TERRANCE DOMINIQUE LUNDY,

      Defendant-Appellant.

UNPUBLISHED
February 25, 2016

No. 324272
Ingham Circuit Court
LC No. 13-000640-FC

Before: O'CONNELL, P.J., and OWENS and BECKERING, JJ.

PER CURIAM.

Defendant, Terrance Lundy, appeals as of right from his conviction following a jury trial on one count of assault with intent to do great bodily harm less than murder, MCL 750.84, one count of carrying a concealed weapon (CCW), MCL 750.227, one count of possession of a weapon by a felon, MCL 750.224f, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court sentenced defendant as a third habitual offender, MCL 769.12, to concurrent prison terms of 114 to 240 months for assault with intent to do great bodily harm less than murder, 57 to 120 months for CCW, and 57 to 120 months for possession of a weapon by a felon. These sentences were to be consecutive to defendant's 24-month sentence for felony-firearm. We affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. FACTS

In the early morning of June 2, 2013, defendant and the victim, Andrew Peralez, arrived separately at a house party in Lansing. The men did not know each other. As the evening progressed, the two men found themselves in a back room of the house in an argument. How this argument began is unclear. But how the argument ended is clear: defendant pulled out a gun and shot Peralez. Defendant admitted at trial that he came to the party with a loaded gun, pulled the gun out during the argument, and that the gun went off twice. Other witnesses also testified that two shots were fired; one witness testified that the second shot was fired

---

[1] The jury found defendant not guilty of assault with intent to commit murder, MCL 750.83.

approximately seven seconds after the first. Peralez testified that after defendant shot him the first time, defendant approached him and aimed toward Peralez's head. According to Peralez, someone struck defendant's hand and the gun fired in front of Peralez' face; he was not hit by that bullet. Defendant testified that at the time of the shooting, Peralez had grabbed him from behind by his shirt; when defendant pulled the gun out, he did not mean to pull the trigger, instead the gun accidentally went off.[2] Peralez survived, but suffered significant injuries from the shooting.

## II. ANALYSIS

### A. INSTRUCTIONAL ERROR

Defendant argues that the trial court erred by denying his request that the jury be instructed pursuant to M Crim JI 17.4,[3] and by failing to sua sponte instruct pursuant to M Crim JI 7.3a. As to M Crim JI 17.4, because the jury acquitted defendant of assault with intent to commit murder, defendant cannot show prejudice, even if the court did err in failing to instruct pursuant to M Crim JI 17.4. And defendant appropriately concedes lack of prejudice. Accordingly, we need not address this challenge any further.[4]

With regard to M Crim JI 7.3a, the accident instruction, defendant waived his instructional issue by affirmatively approving the instructions as they were given by the trial court. *People v Galloway*, 307 Mich App 151, 157; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902 (2015). Although we will not address this argument here, we will consider it in the context of defendant's attendant assertion that trial counsel provided ineffective assistance.

---

[2] At trial, portions of defendant's statements made to the police during interviews after the shooting were played for the jury. The court reporter did not transcribe the evidence as it was played for the jury, and the audio recordings have not been provided on appeal. However, according to the prosecution, defendant's statements that were admitted at trial included the following: 1) "what happened on MLK, I did that, they know I did that, you see what I'm sayin. I'm remorseful for that, that's some shit I shouldn't have did. I was fucking around and shot somebody. I'm glad he didn't die. I did that."; 2) "I take full responsibility for what I did for shooting dude on MLK. That's why I know I'll go to prison for that I know that."; and 3) "I understand what I did, I shot somebody, I take responsibility for that."

[3] M Crim JI 17.4 pertains to mitigating circumstances for the crime of assault with intent to commit murder; defendant was acquitted of that charge in this case.

[4] We note, however, that the trial court did not err, as the instruction was not supported by the evidence. See *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

We review "de novo the constitutional question whether an attorney's ineffective assistance deprived a defendant of his or her Sixth Amendment right to counsel." *People v Fyda*, 288 Mich App 446, 449-450; 793 NW2d 712 (2010).

A defendant enjoys a constitutional right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). This Court presumes effective assistance. *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009). Defendant bears the burden to prove ineffective assistance. *Id*. To do so, defendant must prove, first, that " 'counsel's performance was deficient[,]' " *Galloway*, 307 Mich App at 158, quoting *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), meaning that "counsel's performance fell below 'an objective standard of reasonableness' under 'prevailing professional norms,' " *id*., quoting *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Doing so requires defendant to "overcome the strong presumption that 'counsel's conduct' . . . [was] sound trial strategy." *Id*., quoting *Strickland*, 466 US at 689. Second, " 'defendant must show that the deficient performance prejudiced' " him. *Id*., quoting *Strickland*, 466 US at 687. Prejudice occurs when "it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different." *Fyda*, 288 Mich App at 450.

Defendant argues that he received ineffective assistance of counsel at trial because defense counsel failed to request M Crim JI 7.3a, which provides as follows:

> The defendant says that [he / she] is not guilty of [state crime] because [he / she] did not intend to [*state specific intent required*]. The defendant says that [his / her] conduct was accidental. If the defendant did not intend to [*state specific intent required*], [he / she] is not guilty. The prosecutor must prove beyond a reasonable doubt that the defendant intended to [*state specific intent required*].

Trial courts must "instruct the jury concerning the law applicable to the case and fully and fairly present the case to the jury in an understandable manner." *People v Mills*, 450 Mich 61, 80; 537 NW2d 909, mod on other grounds 450 Mich 1212 (1995). The decision on what jury instructions to request is a matter of trial strategy. *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013).

In this case, we agree with defendant that there was evidence presented at trial to support an accident instruction. Notably, defendant's testimony centered on the idea that the shooting was an accident. Defendant's trial strategy appeared to focus on the theory that the shooting was accidental. Thus, it certainly would have been reasonable to request an accident instruction in this case. However, in general, we defer to trial counsel's decisions with regard to which instructions to request. See *id.* Here, defense counsel focused on the fact that the intent element had not been proven, and his goal in closing argument seemed to be truly focused on acquitting defendant of the most serious charge, assault with intent to commit murder, a defense that succeeded. In any event, even assuming we were to second-guess counsel's decision not to request an accident instruction, defendant would not be entitled to relief because he cannot show

prejudice. On the specific-intent offense of assault with intent to commit great bodily harm less than murder,[5] the trial court instructed the jury that defendant must have "intended to cause great bodily harm." It further described the intent element by explaining that the prosecutor must prove that the defendant "meant" to commit the offense and that "intent may be proved by what [defendant] said, what he did, how he did it, or by any other facts and circumstances in evidence." The trial court twice instructed the jury that "[t]he prosecutor must prove each element of the crime beyond a reasonable doubt" and that "[i]f you find that the prosecutor has not proven every element beyond a reasonable doubt, then you must find the defendant not guilty." Because the jury found that defendant had the requisite specific intent in this case, it is apparent that the jury rejected defendant's theory of an accidental shooting. Had the jury believed the theory of an accidental shooting, it would have acquitted defendant of assault with intent to commit great bodily harm less than murder. As such, any shortcoming on the part of counsel to request the accident instruction did not prejudice defendant. *People v Hawthorne*, 474 Mich 174, 185; 713 NW2d 724 (2006) ("[t]he jury instructions explaining the intent element of [the offense for which the defendant was convicted] made it clear that a finding of accident would be inconsistent with a finding that defendant possessed the intent required for [the offense]") (citation and quotation marks omitted; alteration in original).

## C. SENTENCING

Defendant next raises two sentencing issues: (1) the trial court erred when it scored PRV 5; and (2) the mandatory use of judicially-found facts to increase his minimum sentence violated our Supreme Court's decision in *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). Because we find that the trial court erred when it scored PRV 5, and because the scoring error resulted in an increased guidelines range, we remand for resentencing. The trial court is to conduct resentencing in accordance with *Lockridge*.

We first turn our attention to defendant's *Lockridge* issue. Defendant contends, and the record appears to support, that the trial court scored OV 3—MCL 777.33, physical injury to the victim—based on Peralez's statements at sentencing.[6] Contrary to defendant's contentions on appeal, the trial court did not err by scoring OV 3 based on comments made at sentencing. Our Supreme Court's decision in *Lockridge* does not prohibit a sentencing court from scoring the guidelines based on facts not found by the jury or admitted by defendant; rather, *Lockridge* encourages this type of scoring. *Lockridge*, 489 Mich at 391, 392 n 28. Rather, in *Lockridge*, the Court held that the constitutional deficiency in Michigan's sentencing guidelines was "the extent to which the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under [*Alleyne v United States*, 570 US __; 133 S Ct 2151; 186 L Ed 2d 314 (2013)]." *Lockridge*, 498

---

[5] Assault with intent to commit great bodily harm less than murder is a specific-intent offense. *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997).

[6] The sentencing transcript reveals ample evidence for the conclusion that Peralez suffered injury, thereby supporting the trial court's scoring decision.

Mich at 364. The Court in *Lockridge* remedied this constitutional violation by making the guidelines advisory, rather than mandatory. *Id.*

Accordingly, in this case, the mandatory use of the guidelines, which were scored on the basis of facts beyond those admitted by defendant or found by the jury beyond a reasonable doubt, runs afoul of *Lockridge*. The scoring of the guidelines by the trial court, however, did not. Were this the only sentencing error in this case, we would remand for a *Crosby*[7] hearing, as described in *Lockridge*.

However, the mandatory use of sentencing guidelines—which were calculated by the sentencing judge based on facts neither found by the jury nor admitted by defendant—was not the only sentencing error in this case. In addition to the *Lockridge* issue, we find that defendant's guidelines were incorrectly scored, and that this incorrect scoring altered the guidelines range, thereby requiring remand for a full resentencing. See *People v Francisco*, 474 Mich 82; 711 NW2d 44 (2006).

In this regard, defendant challenges the scoring of PRV 5. "A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information." *People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). If "a sentencing court relied on an inappropriate guidelines range," the sentence is "invalid." *Id*.

PRV 5 governs prior misdemeanor convictions and prior misdemeanor juvenile adjudications. MCL 777.55(1). The trial court should only assign points under PRV 5 for offenses "against a person or property, a controlled substance offense, or a weapon offense" and misdemeanor convictions for "operating or attempting to operate a vehicle . . . while under the influence of or impaired by alcohol, a controlled substance, or a combination of alcohol and a controlled substance." MCL 777.55(2). If a defendant has two qualifying convictions, the trial court must assign five points. MCL 777.55(1)(d). If a defendant has one qualifying conviction, the trial court must assign two points. MCL 777.55(1)(e).

After reviewing the record before us, we agree with defendant that PRV 5 should have been scored at two points, as we only find one misdemeanor conviction against a person or property, and defendant has no other qualifying misdemeanor offenses. If PRV 5 is correctly scored at two points, defendant would have a total PRV score of 72, leaving him with a minimum guidelines range of 34 to 100 months. MCL 777.65. The trial court originally calculated defendant's minimum guidelines range at 38 to 114 months, based on a total PRV score of 75. See MCL 777.65. Thus, the scoring error affected the applicable guidelines range. Because the scoring error affected the minimum guidelines range, we find that resentencing is required. See *Francisco*, 474 Mich at 89 n 8. Rather than remanding for a *Crosby* hearing at which the sentencing court can determine whether it would impose the same sentence, but for the constitutional error of treating the guidelines as mandatory, we believe that a full resentencing is required in this instance. See *id.* Indeed, defendant is entitled to be sentenced on the basis of

---

[7] *United States v Crosby*, 397 F3d 103 (CA 2, 2005).

-5-

accurate information, *id.* at 90. Here, the scoring of PRV 5 left the sentencing court with inaccurate information. On remand, the court is to calculate the correct guidelines, and, in accordance with *Lockridge*, resentence defendant by utilizing the correct, but now advisory, guidelines range.[8]

We affirm defendant's convictions, but vacate his sentences and remand for resentencing consistent with this opinion. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Jane M. Beckering

---

[8] We note that our Supreme Court has currently ordered supplemental briefing in a case addressing the effect of *Lockridge* on a *Francisco*-type error, i.e., whether *Lockridge*'s rendering of the guidelines as advisory has any effect on the relief, if any, to which a defendant is entitled when the guidelines are scored incorrectly and the scoring error affects the applicable, and now advisory, guidelines range. *People v Douglas*, __ Mich __; 870 NW2d 730 (2015) (Docket No. 150789).