# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER SCOTT VUKIN,

Defendant-Appellant.

UNPUBLISHED
April 28, 2016

No. 323928
Kent Circuit Court
LC No. 13-010980-FH

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Defendant's infant son suffered an unexplained spiral fracture of his femur. The prosecutor charged defendant with second-degree child abuse, MCL 750.136b(3), alleging that defendant recklessly inflicted the injury out of frustration with the child's crying. During the trial, the prosecution played a video of defendant's interrogation by law enforcement personnel. Inadvertently, the video briefly exposed the presence of a polygraph machine on the table at which defendant sat. The jury convicted defendant as charged. Defendant contends that the image of the polygraph prejudiced his defense. He also challenges the performance of his trial counsel and the propriety of the prosecutor's statements during closing arguments. We discern no reversible error and therefore affirm.

## I. BACKGROUND

Defendant's conviction arises from the discovery of a spiral fracture to his 10-month-old son's right femur. The child's mother and his daycare provider could not identify a feasible accidental mechanism for the injury during the time the child was in their care. Text messages and other statements made by defendant established that after defendant retrieved his son from daycare, the child was constipated, uncomfortable, and difficult to console. The prosecution theorized that while frustrated and exhausted, defendant caused the injury by pulling too roughly on the infant's leg. Defendant countered that the baby started showing signs that something was amiss while at daycare the previous day. Accordingly, defendant believed either the daycare provider or another child accidentally caused the injury.

## II. POLYGRAPH MACHINE

During the investigating officer's testimony, the prosecution played video footage of an interrogation conducted by the polygraph examiner after completion of the exam. The polygraph

equipment remained on the table next to defendant. The prosecutor placed a Post-It note over half of the projector lens, obscuring from view images of the detective and the equipment. Before playing the video, the court instructed the jury, "[Y]ou're only going to see a small portion of the screen, . . . the portion you're going to see is that of [defendant's] digital image, and the reason is that what anybody else was doing is irrelevant." The prosecutor played the footage without incident.

During the subsequent testimony of Dr. Sarah Brown, someone inadvertently turned the projector back on and it began playing uncensored. The prosecutor quickly responded by turning the power off and covering the projector lens with her hand.

Defendant objected and the court dismissed the jury. The court inquired of defendant, both attorneys, his staff, and persons sitting in the audience regarding what they saw. Only defendant claimed to have seen and identified the polygraph machine. Everyone else indicated that the image disappeared so quickly that they failed to process it. Defendant unsuccessfully moved for a mistrial. The court found that the full image was visible to the jury for possibly five seconds, but most likely "less than a second," and that a layperson would not appreciate from such a quick glimpse that the equipment on the table was a polygraph machine. A reserve police officer sat on the jury and may have possessed sufficient knowledge to identify the machine, the court noted. Accordingly, the court designated that juror as an alternate and excluded him from deliberations at the conclusion of the case.

Defendant now challenges the court's denial of his mistrial motion and its decision to name the reserve police officer juror as an alternate. We review a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). An abuse of discretion occurs "if the trial court chose an outcome that is outside the range of principled outcomes." *Id*. We review a trial court's underlying factual findings for clear error. MCR 2.613(C). A finding "is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine*, 293 Mich App 192, 194; 809 NW2d 439 (2011) (quotation marks and citation omitted). "A mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995) (citations omitted).

"[I]t is a bright-line rule that reference to taking or passing a polygraph test is error." *People v Nash*, 244 Mich App 93, 97; 625 NW2d 87 (2000). However, "reference to a polygraph test . . . does not always constitute error requiring reversal." *Id*. at 98. A reference to a polygraph that is "inadvertent and isolated" may not amount to reversible error. *Id*. (quotation marks and citation omitted). To determine whether a defendant was prejudiced by a reference to a polygraph, the *Nash* Court considered the following factors:

> (1) whether defendant objected and/or sought a cautionary instruction; (2) whether the reference was inadvertent; (3) whether there were repeated references; (4) whether the reference was an attempt to bolster a witness's credibility; and (5) whether the results of the test were admitted rather than merely the fact that a test had been conducted. [*Id*. (quotation marks and citation omitted).]

-2-

With respect to the first factor, defendant objected and sought a mistrial after the subject image was shown. However, this is the only factor that weighs in defendant's favor.

The jury's exposure to the image was brief, inadvertent and singular. It appears from the record that the prosecutor accidentally activated the projector connected to her computer. Given the prosecutor's earlier actions to cover the images and protect defendant's rights as well as her quick response of covering the lens and powering down the projector, we discern no error in the court's conclusion that the exposure was not intentional.

Moreover, the "reference" to the polygraph was isolated—the jury was able to see the polygraph equipment for only a second and may not have noticed the image at all. The court questioned several individuals positioned around the courtroom before resolving this issue. We therefore discern no error in this regard.

Further, the incident occurred at a random moment during the trial. The prosecutor quickly powered off the projector and covered the lens. She thereafter made no reference to the polygraph machine. Accordingly, there is no evidence that the prosecutor intended to reduce defendant's credibility in the eyes of the jury.

Finally, the polygraph results were not revealed to the jury, nor was the jury otherwise made aware that a test had been administered. The DVD recording of defendant's police-station interview was presented for this Court's consideration. We were able to review the uncensored recording at a leisurely pace, rather than for the brief moment the image was accidentally shown to the jury. In the recording, the equipment appears on the table between defendant and the detective. It is silver and approximately the size and shape of shirt gift box. Several wires extrude from the machine, including one attached to a black object that looks like a blood pressure cuff. Given our lengthy viewing of the recording, we were able to discern that the equipment was likely a polygraph machine. However, we cannot dispute the trial court's conclusion that the jury would not have been able to identify the machine based on its one to five second appearance on the screen. And based on this record, we cannot conclude that the trial court acted outside its discretion in denying defendant's motion for a mistrial.

Defendant also contends that the trial court erred by designating the reserve police officer juror as an alternate and dismissing him from deliberation. The court should have determined whether this juror tainted the remainder of the jury by sharing his knowledge before his dismissal, defendant argues. Moreover, defendant asserts, the court's action violated MCR 6.411, which requires that alternate jurors be selected at random. However, defense counsel specifically agreed to this procedure at trial by stating, "I have no objection to that, Your Honor." This was an express approval waiving any resulting error. Therefore, there is nothing left for this Court's review. See *People v Vaughn*, 491 Mich 642, 663; 821 NW2d 288 (2012); *People v Matuszak*, 263 Mich App 42, 57; 687 NW2d 342 (2004).

### III. ASSISTANCE OF COUNSEL

Defendant raises several challenges to the performance of his trial counsel and contends that these errors demand a new trial. Defendant preserved his challenge by filing a motion for a new trial in the lower court. However, the trial court denied that motion without creating a

record regarding trial counsel's thought process. Our review is therefore limited to error discernable on the existing record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

> " '[T]he right to counsel is the right to the effective assistance of counsel.' " *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984), quoting *McMann v Richardson*, 397 US 759, 771 n 14; 90 S Ct 1441; 25 L Ed 2d 763 (1970). An ineffective assistance claim includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id.* at 663-664. The defendant also must overcome the strong presumptions that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689. [*People v Galloway*, 307 Mich App 151, 157-158; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902; 870 NW2d 893 (2015).]

Defendant first contends that counsel caused severe prejudice by opening the door to negative character evidence. Counsel's line of questioning was not a reasonable trial strategy, defendant continues, because the witness provided negative character evidence at the preliminary examination, placing counsel on notice of her likely testimony.

The prosecution presented Elissa Jahnke as its first witness at trial. Jahnke is the child's mother. She and defendant were not married and did not live together but shared custody of their son. At defendant's preliminary examination, defense counsel had asked Jahnke: "Have you ever seen [defendant] do anything that would be inappropriate or reckless for his child?" Jahnke answered: "Yes." Jahnke explained that she had once reported defendant to authorities because he "consumed medical marijuana and then operated a vehicle" containing the child. Jahnke added, "And there were other instances of that."

Inexplicably, on cross-examination at trial, defense counsel asked almost precisely the same question: "Have you ever seen [defendant] do anything inappropriate or reckless with [the baby]?" Jahnke answered affirmatively, just as she had at the preliminary examination. Defense counsel then ignored that answer and elicited testimony that Jahnke had never observed defendant be "physically violent" or "aggressive" or hurt their child, "throw[] the child around," "pull[] his legs" or "[i]nappropriately twist[] him," or even "yank[] him out of [his] car seat."

On redirect examination, the prosecutor delved into Jahnke's response that she had seen defendant act recklessly with the child:

*Q*. Um, now, he did ask you if you had seen him be in appropriate. What were you referencing?

*The Court*: The question was had he been reckless.

*Prosecutor*: Reckless, yes. Thank you.

*Q*. What were you referencing?

*Defense Counsel*: Your Honor, if we may approach.

*The Court*: You may.

*Defense Counsel*: Thank you.
(Off-the-record discussion at 10:30 a.m. at the bench between counsel and the Court.)

*Prosecutor*: Can you describe what you meant when you said you have seen him be reckless with [the child]?

*Ms. Jahnke*: Um - - um - - he has a medical marijuana card, and, um, he had used marijuana, um while caring for [the child] and had driven with him in the car while under the influence.

*Defense Counsel*: Your Honor, I object. I don't believe the foundation's been laid that Ms. Jahnke would be able to state if somebody's under the influence or not. That's a legal term similar to under the influence under the OWI statute, people under the influence.

*The Court*: You may inquire on recross if you wish to. Overruled.

*Prosecutor*: You were also asked if he was ever physically aggressive. I'm going to ask you, have you seen the defendant have episodes of anger where he has trouble managing his anger?

*A*. Yes.

*Q*. In fact, at a family court hearing he became - - he yelled at you in the courthouse for speaking to one of the witnesses. Is that true?

*A*. Yes.

*Defense Counsel:* Your Honor, I object to relevance.

*The Court*: What's the relevance, Counsel?

*Prosecutor*: Well, I'll move on.

*Q*. You have seen him have anger management issues?

*A*. Yes.

*The Court*: All right. Ladies and Gentlemen, disregard the - - you can answer. You can consider the answer of the witness that she's seen the defendant have anger issues. Disregard, please, the context of the family court and the statements. That question is withdrawn. That's not evidence before you. Disregard it. Please continue.

On recross examination, defense counsel returned to the subject of defendant's marijuana use:

*Q*. Okay. So you don't really know if Chris was operating the vehicle under the influence?

*A*. I do know that.

*Q*. How's that?

*A*. Because I watched him chew marijuana and then a few minutes later take [the child] and drive him away from my home.

*Q*. How interesting. So he was chewing the flower of the plant?

*A*. I don't know.

*Q*. Chewing the leaf? What was he chewing?

*A*. Um, he said he was chewing his pot.

*Q*. Okay.

*A*. And I smelled it, very strongly.

During the next break in the proceedings, the court and counsel recapitulated their sidebar conference. The court observed:

I don't know why [defense counsel] asked that question, but he asked it.

And clearly, I immediately, when I heard that answer, heard that question and that answer, I thought, "Oh, well, redirect is going to get very interesting in this case," and it did. The defense opened the door. The defense - - and [defense counsel] said, "Oh, Judge, I didn't open the door to that, no. You - - I said, you opened the barn door, 20 horses could get out, is what I said in the sidebar, or words to that effect. And he said, "Well, Judge, she's going to go into medical marijuana." I said, "You asked the question."

We can conceive of no possible reason that constitutionally effective defense counsel would have opened the door to Jahnke's testimony concerning defendant's marijuana use, especially in light of her answer to the same question during the preliminary examination. The

-6-

defense in this case rose or fell on the jury's assessment of whether defendant had acted recklessly. Evidence that defendant drove with the child after ingesting medical marijuana could not possibly have bolstered the defense. If opening the door to this highly prejudicial testimony was "strategic," the underlying strategy utterly eludes us. We conclude that counsel's decision to question Jahnke regarding whether she had ever seen defendant "do anything inappropriate or reckless" with the child qualifies as a blunder lacking any strategic justification.

But to establish a claim of ineffective assistance of counsel, a defendant must also demonstrate "that counsel's deficient performance prejudiced the defense." *People v Fyda*, 288 Mich App 446, 450; 793 NW2d 712 (2010). Counsel's performance may be determined to have caused prejudice "if it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different." *Id*. We conclude that defendant has not sustained his burden of establishing that but for the introduction of defendant's marijuana use, "there is a reasonable probability that the outcome of [the defendant's trial] would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). The trial court aptly summarized the reasons it reached the same conclusion, and we adopt its findings:

> The evidence at trial demonstrated clearly to this Court and to the trier of fact of [sic] the defendant's guilt beyond a reasonable doubt. I don't know why he did the things he did, but the evidence certainly demonstrated that he was the author of the injuries that were visited upon his child.

> That was the jury's conclusion. It was logical. It made perfect sense. It was a reasonable, reasoned, progressive analysis of a series of pieces of circumstantial and incrementally inculpatory evidence during the course of presentation by the People that led to the inescapable conclusion that the accused was, in fact, he who injured his own son.

> It's unpleasant, but it is what the proofs show. This proof was demonstrated by both the absence of any manifestation of injury of the nature that would suggest the spiral fracture existed in the child until the accused took the child to the emergency room and immediately preceding that, sometime before it.

> * * *

> He parked his car a hundred plus feet from the door entry. He went in in the middle of the night. He didn't take - - at that point, the child, if his theory is correct, he knows that the child is in extremis. He knows that the child is severely in pain, yet he leaves the child in the middle of an abandoned parking lot in the middle of the night, hundreds of feet away from his closest point of ingress or egress. It's utterly illogical for - - save one purpose, you do not want anyone to see the child. The only reason you do not want someone to see your child is if you know you are the author of their injuries.

> That was the absolute logical, cogent, reasonable conclusion. And the corroborative aspect of that piece of forensic evidence and physical evidence was so substantial that it really, uh, almost overwhelms all other aspects of any

potential deficiencies which exist in the record. But in conjunction with that, there's the expert testimony of the People's physician that we just spoke about on re-summary exam or rebuttal exam with the plaintiff's counsel or defendant's counsel.

Defendant also contends that defense counsel should have objected when the prosecutor bolstered the credibility of the child's daycare provider, Joanne Vander Veen. Ottawa County Sheriff's Deputy Ann Koster testified during the prosecution's case-in-chief that she interviewed Vander Veen as a suspect in the case. On direct examination, the prosecutor inquired whether Vander Veen's statements during that interrogation matched her statements at trial. Deputy Koster indicated that Vander Veen's "statements were the same as she gave today" and that "[h]er statements today were correct, as they were when I interviewed her back in March." During Vander Veen's earlier testimony, defense counsel asked her whether her statements were consistent with her police statement and Vander Veen testified that she believed so. Accordingly, the prosecutor's later questioning of Koster created a stronger belief in the accuracy of Vander Veen's more hesitant testimony.

However, defendant's appellate challenge centers solely on MRE 608(a)(2). The evidentiary rule permits a party to "attack[] or support[]" the "credibility of a witness" "by evidence in the form of opinion or reputation." The rule continues, "evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise." MRE 608(a)(2) simply was not implicated in this case. No one attacked Vander Veen's character for truthfulness. Although defense counsel inquired of Vander Veen, and the prosecutor of Koster, whether Vander Veen's police statement and trial testimony were consistent, no one followed up by accusing her of falsehood or inaccuracy. Simply asking whether Vander Veen's statement and testimony were consistent was not an attack on her truthfulness. As such, defendant's appellate challenge lacks merit.

Next, defendant accuses defense counsel of allowing Dr. Brown's "testimony to go completely unchecked," specifically by failing to object when the doctor, who was qualified as an expert in "child abuse pediatrics," was allowed to testify regarding "the psyche of abusers." Defendant further challenges counsel for failing to confront the doctor with her inconsistent preliminary examination testimony. First, defendant does not identify those portions of Dr. Brown's trial testimony that were inconsistent with her testimony at the preliminary examination. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority." *Matuszak*, 263 Mich App at 59 (quotation marks and citation omitted). Thus, we deem that challenge abandoned.

We agree with defendant that "an expert may not opine on matters outside his or her area of expertise." *People v Unger*, 278 Mich App 210, 251; 749 NW2d 272 (2008). However, the court actually qualified Brown as an expert in "the field of child abuse." The testimony Dr. Brown provided regarding the "psyche of a child abuser" was given in response to questions such as "is there something unique about medical history in child abuse cases." Dr. Brown merely explained how a doctor separates normal injuries from cases of suspected abuse. Dr. Brown was required to explain that the injury alone was not enough; a doctor must also consider the parent's story and demeanor. At another point in her testimony, Dr. Brown was asked to

-8-

explain how a child who was not yet walking or crawling could suffer a spiral fracture to the femur. Dr. Brown indicated that "[t]he most common confessions that we . . . hear[]" in such cases "is that something causes frustration" and the parent yanks the child's limb. The doctor did not exceed the scope of her expertise by providing psychological opinions about the mindsets of child abusers. Rather, she testified as a doctor who examines children who have been abused regarding the statements she has heard from parents. This was within her realm of expertise and defense counsel was not ineffective for failing to make a meritless objection. *People v Hardy*, 494 Mich 430, 445; 835 NW2d 340 (2013).

## IV. PROSECUTORIAL MISCONDUCT

Defendant next contends that the prosecutor made several improper comments during closing argument. Defendant failed to preserve his challenges by raising contemporaneous objections, *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010), and our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). When reviewing a prosecutorial misconduct challenge, we must examine the entire record and consider the subject comments in context. *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). The defendant is only entitled to relief if the comments deprived him of the right to a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

"Prosecutors . . . have a duty to see that defendants receive a fair trial while attempting to convict those guilty of crimes." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). While prosecutors are generally afforded "great latitude regarding their arguments and conduct," they "should not resort to civic duty arguments that appeal to the fears and prejudices of jury members or express their personal opinion of a defendant's guilt, and must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 282-283; 531 NW2d 659 (1995) (quotation marks and citations omitted). Further, the prosecutor is not permitted to "vouch for the credibility of his or her witnesses 'to the effect that [the prosecutor] has some special knowledge concerning a witness'[s] truthfulness.' " *People v Wood*, 307 Mich App 485, 505; 862 NW2d 7 (2014), quoting *Bahoda*, 448 Mich at 276.

Defendant challenges several specific remarks made by the prosecutor during closing argument. The first reads: "I don't believe [defendant] is being honest with you or the detective (about giving the enema in the car)." When making this statement, the prosecutor was questioning defendant's story about his early morning trip to Meijer to purchase an enema for the child. Security camera footage established that defendant arrived at Meijer at approximately 1:50 a.m. Defendant originally lied to police and told them he carried the baby into the store. He later admitted that he left the sleeping child in the car. Defendant further indicated that after he left the store, he drove to the side of the building, placed the child on the seat and administered the enema in the parking lot. The prosecutor questioned the accuracy of that statement, noting the outside temperature and the proximity to defendant's home. The prosecutor then stated:

> All right. So, again, Ladies and Gentlemen, I don't believe he is being honest with you or with the detective when he says that he gave an enema in the parking lot, because here's the Meijer parking lot. Remember, the camera's here,

(Indicating), and we're looking at [an image of the Meijer parking lot], and the camera shoots this way, toward Wilson Avenue, and we see that he parks under the light, under the cart corral over here, and then he turns on his lights and he drives this way, right toward Lake Michigan Drive. The camera stops right about here. (Indicating). I mean, reason and common sense. That doesn't make any sense.

"The propriety of the prosecutor's comments does not turn on whether or not any magic words are used. The crucial inquiry is not whether the prosecutor said 'We know' or 'I know' or 'I believe,' but rather whether the prosecutor was attempting to vouch for the defendant's guilt." *People v Reed*, 449 Mich 375, 399; 535 NW2d 496 (1995) (quotation marks and citation omitted). But "[a] prosecutor may [] argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997). Here, the prosecutor compared defendant's version of events to the evidence and emphasized those portions that seemed incredible. Read in context, the prosecutor was not expressing her personal beliefs or vouching for defendant's guilt. Rather, she used the facts and evidence to argue that defendant's explanation of events was not worthy of belief, which she was entitled to do.

Defendant also argues that the prosecutor improperly vouched for Vander Veen's credibility by stating, "So the prosecution's conclusion, after focusing on Joanne VanderVeen, is that it happened after they left Joanne VanderVeen's." Again, placed in context, the prosecutor was not vouching for the credibility of a witness. The prosecutor noted that Dr. Brown indicated that crying was the "number one trigger" for child abuse, and she went on to explain her theory of the case that the injury occurred after, not while, the child was in Vander Veen's care:

So the prosecution's conclusion, after focusing on Joanne VanderVeen [sic], is that it happened after they left Joanne VanderVeen's [sic]. She has no issues in 20 years. She knows how to deal with babies. She had other people and witnesses in her home right there.

The child's fine, and the child was crawled over top of by a 1[]-and-a-half-year-old three times during the day. They're playing with each other. She witnesses it three times. Look, a child crawling over top of your legs with a spiral fracture, yeah, you're going to have something, and there was nothing. He just pulled her hair. They were just playing. That baby was fine other than the constipation.

The prosecutor emphasized that the child was not crying or showing other signs of physical injury while in Vander Veen's care and explained why the defense theory of how the injury occurred was not logical. This was not improper argument.

Defendant contends that the prosecutor made several comments that appealed to the jury's civic duty to convict defendant of child abuse. While the prosecutor's statements may seem egregious at first blush, they must be viewed in context. *Bennett*, 290 Mich App at 475. Viewed in context, "an otherwise improper remark may not rise to an error requiring reversal" if

it appears that "the prosecutor is responding to the defense counsel's argument." *People v Kennebrew*, 220 Mich App 601, 608; 560 NW2d 354 (1996).

Defendant challenges the prosecutor's comments that "[defendant] is guilty, and he needs to be held accountable;" "[y]ou can't abuse the child and let him get away with it;" and "[y]ou (the jury need) to be confident that you sleep well tonight" and you do that by saying "based on the evidence they gave me in that courtroom there was no other verdict I could have reached." We first note that defendant misquotes the prosecutor in his appellate brief. Moreover, the prosecutor was merely responding to statements made by defense counsel.

During closing argument, defense counsel stated:

So when I spoke during my opening statement, I mentioned that there's three things that I think need to be protected.

One of them was our criminal justice system, and that we have to hold the prosecuting attorney to their burden of proof to ensure that innocent people aren't convicted, that there aren't wrongful convictions. That's important. The whole way our criminal justice system is ran, [sic] you need to protect that. You need to make sure that . . . only guilty people are convicted. You need to protect that.

You need to protect [defendant], and . . . to ensure that he's not convicted for something he didn't do. Hold him to that burden of proof. And finally, you need to protect yourself. You need to protect yourself that when you go home tonight --

The prosecutor objected at that point. The trial court initially sustained the objection. During a sidebar, defense counsel argued that he had "case law that says" he could make the argument. The trial court thought the argument was heading in an improper direction but allowed defendant to argue that the jury must be confident in their decision. Defense counsel then continued:

When you go home tonight, you're going to go to sleep, put your head on the pillow, I want you to get to sleep well, and one way that you can do that, by knowing you made the right decision and that you only convicted a guilty person.

Counsel went on to argue why there was reasonable doubt in the case and concluded by stating, "And if you're going to hold them to their burden of proof, you're going to come back here with a not guilty verdict, and you'll be able to go home, put your head on the pillow and sleep well tonight. Thank you."

During rebuttal, the prosecutor responded by arguing:

So then [defendant] says to do three things. Three things, save the justice system. I submit to you . . . the only way to save the justice system is to just decide this case just like you took your oath, only on the facts. . . .

Number two, protect [defendant]. Ladies and Gentlemen, *[defendant] is guilty, and he needs to be held accountable*. . . . [Y]ou need to let him know, yes,

-11-

you are responsible, yes, the Court should become involved. *You can't abuse the child and then get away with it*. You need . . . accountability. That's what the justice system does.

Third, *he wants you to be confident that you sleep well tonight*, that you made the right decision. The only way you're going to do that is to not do it on feelings. Do not do it on feelings. You need to go home and say, when you sit down across from your significant other, your friend, and you have coffee, and, [sic] "Hey, you were on jury duty, what did you do? Was he guilty?" You can honestly say, "You know what? *Based on the evidence they gave me in that courtroom, there was no other verdict I could reach.* All the evidence pointed to him." That's how you sleep well. You don't do it on emotion. You say that I took an oath, I said I'd do it on the facts, these are the facts. [Emphasis added.]

Given defendant's argument, there was a clear invitation for the prosecutor to explore these topics on rebuttal. The prosecutor's response was proportional because it merely rebutted defendant's arguments. Notably, the crux of the prosecutor's response was urging the jury to decide the case based on the facts rather than emotion. Because the prosecutor's statements were invited and proportional, and because they were in direct response to defense counsel's argument, the prosecutor's remarks did not amount to error requiring reversal.

Defendant argues that the prosecutor improperly appealed to the jurors' sense of civic duty and fear by stating, "I represent [the victim]. Even though he's 10 months old, he still deserves justice" and "if you're willing to ignore all of this evidence, send him home with the child." A "prosecutor commits misconduct when he or she invites jurors to suspend their powers of judgment and decide the case on the basis of sympathy or civic duty." *People v Lane*, 308 Mich App 38, 66; 862 NW2d 446 (2014). After the prosecutor made these comments, however, the trial court sua sponte instructed the jury to disregard them. Because the trial court immediately gave a curative instruction, and because we presume that jurors follow their instructions, see *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011), defendant has not shown error requiring reversal.

Finally, defendant argues that the prosecutor misstated the law with respect to venue thereby "eviscerate[ing] the prosecutor's duty to prove venue." The events underlying this case occurred in two counties—Kent and Ottawa. The Ottawa County Sheriff's Department was involved in investigating the matter. However, when the evidence suggested that the injury occurred in the early morning hours of March 5 while the child was in defendant's care, the Kent County Prosecutor's Office pursued charges. During closing argument, the prosecutor discussed events spanning several days and emphasized which evidence supported that the injury occurred early in the morning on March 5. The prosecutor's argument cannot be interpreted as

eliminating the prosecution's duty to prove when and where the injury occurred, which would establish the proper venue to hear the matter. Accordingly, we discern no error.

We affirm.

/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly